FULCRUM CENTRAL, Appellant,

v.

AUTOTESTER, INC., Appellee.

No. 05–02–01132–CV.

Court of Appeals of Texas,
Dallas.

March 17, 2003.

Keith A. Langley, Goodwin Gruber, P.C., Dallas, for appellant.

Michael L. Jones, Henry, Meier & Jones, L.L.P., Dallas, for appellee.

Before Justices WRIGHT, FITZGERALD, and LANG.

## OPINION

Opinion by Justice LANG.

Fulcrum Central ("Fulcrum") appeals the summary judgment rendered against it in favor of AutoTester, Inc. ("AutoTester"). In two issues, Fulcrum contends the trial court erred in ruling that the parties had agreed to an implied novation of a commercial lease because (1) Fulcrum proved that no novation existed as a matter of law, or (2) alternatively, AutoTester failed to prove that no fact issues remained as to whether the parties had agreed to the novation. Additionally, in a third issue, Fulcrum argues it is entitled to summary judgment on AutoTester's liability under the lease and on the issue of subsequent damages. For reasons that follow, we resolve Fulcrum's second issue in its favor and decline to address its first. However, because fact issues remain on the issues of liability and damages, we resolve Fulcrum's third issue against it. Therefore, we reverse the trial court's judgment and remand this cause for further proceedings.

### FACTUAL AND PROCEDURAL BACKGROUND

AutoTester leased 37,098 square feet of commercial office space in Dallas from Fulcrum. In December 1998, the parties entered into a lease agreement running through July 31, 2009. It is undisputed that within two years of signing the lease AutoTester defaulted by failing to pay rent and other charges. On September 28, 2000, Fulcrum wrote to AutoTester and informed it that because of its default, Fulcrum was terminating the lease effective immediately. Additionally, Fulcrum

advised AutoTester that it was liable for all damages under the lease.[1] The letter concluded, "You may contact me to discuss reasonable access to the Premises for the limited purpose of removing Tenant's property." As of that date, AutoTester was delinquent in the amount of $74,174.77. AutoTester's president, Kathy O'Halloran, asked Fulcrum to allow Auto-Tester to stay on the premises until it could find new office space.

The next day, on September 29, Fulcrum again wrote to AutoTester. Fulcrum informed AutoTester that it could continue to occupy the premises on a day-to-day basis for the sum of $1 per day, ostensibly so that it could "make an orderly move out." Both Fulcrum and AutoTester signed the September 29th letter indicating their agreement to its terms. It is this letter that is the source of the present lawsuit.[2] On one side, Fulcrum calls its letter a "temporary accommodation agreement," which did not extinguish its right to recover damages under the 1998 lease. On the other side, AutoTester contends the letter is a "second lease," which constituted an implied novation of the original. More specifically, AutoTester argues the second lease relieved it of its liability for breach of contract on the original lease.

AutoTester eventually vacated the premises in November 2000. At some point thereafter, AutoTester paid Fulcrum all the rent it owed as of September 28, 2000, plus $1 per day for each day it remained on the premises from September 29 until the date it moved out. On July 11, 2001, Fulcrum filed suit to recover all of its damages from AutoTester's breach, allegedly in excess of $2.4 million. AutoTester filed a motion for summary judgment on the grounds that the September 29th letter was an implied novation as a matter of law. Fulcrum responded by filing its own motion for summary judgment claiming it was entitled to certain damages resulting from AutoTester's breach as a matter of law. On April 18, 2001, the trial court granted summary judgment in favor of AutoTester and ordered a take-nothing judgment in its favor. This appeal followed.

## STANDARD OF REVIEW

We review a summary judgment de novo. *Dickey v. Club Corp. of Am.*, 12

---

1. According to the lease, Fulcrum's damages consisted of (1) the cost of recovering the premises, (2) the unpaid rent due and payable plus interest, (3) the balance of rent for the remainder of the term of the lease minus the fair market value of the premises for such period, and (4) any other sum owed by Auto-Tester to Fulcrum.

2. The text of the September 29 letter read as follows:

   Pursuant to Landlord's letter dated September 28, 2000, Landlord has terminated the Lease and Tenant's right to possession. Tenant hereby acknowledges the termination of the lease.
   Landlord will allow Tenant to occupy the Premises on a day-to-day basis for rental of one dollar ($1.00) per day, terminable by Landlord with one (1) day's notice, with or without cause. Tenant accepts the current Premises "as is." Tenant further agrees to the following provisions in connection with its continued occupancy of the Premises:
   1. Tenant agrees that it will maintain insurance on the Premises in accordance with Paragraphs 30 and 31 of the Lease.
   2. Tenant agrees that the obligation to indemnify Landlord in accordance with the provisions of Paragraph 32 of the Lease is incorporated into this agreement in full.
   3. Tenant further agrees to confine its use of the Premises to those uses set forth in Paragraph 4 of the Lease.
   4. Tenant agrees to abide by the Rules and Regulations set forth in Rider No. 902 of the Lease.
   5. This letter in no way reinstates the Lease.

S.W.3d 172, 175 (Tex.App.-Dallas 2000, pet. denied); *Reynosa v. Huff,* 21 S.W.3d 510, 512 (Tex.App.-San Antonio 2000, no pet.). The standards for reviewing a traditional summary judgment are well established. *See Sysco Food Servs. v. Trapnell,* 890 S.W.2d 796, 800 (Tex.1994); *Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). In deciding whether there was a fact issue raised to preclude summary judgment, we accept all evidence favorable to the nonmovant as true, indulge the nonmovant with every favorable reasonable inference, and resolve any doubt in the nonmovant's favor. *Nixon,* 690 S.W.2d at 548–49. We disregard all conflicts in the evidence and accept as true all evidence supporting the nonmovant. *See Fought v. Solce,* 821 S.W.2d 218, 219 (Tex.App.-Houston [1st Dist.] 1991, writ denied). All doubts as to the existence of a genuine issue as to a material fact are resolved against the movant. *Id.* (citing *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.,* 391 S.W.2d 41, 47 (Tex.1965)).

For a defendant to prevail on summary judgment, it must show there is no genuine issue of material fact concerning one or more essential elements of the plaintiff's cause of action or establish each element of an affirmative defense as a matter of law. Tex.R. Civ. P. 166a(c); *see Black v. Victoria Lloyds Ins. Co.,* 797 S.W.2d 20, 27 (Tex.1990). Only after the defendant produces evidence entitling him to summary judgment does the burden shift to the plaintiff to present evidence raising a fact issue on the elements negated. *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex.1979); *Muckelroy v. Richardson Indep. Sch. Dist.,* 884 S.W.2d 825, 828 (Tex.App.-Dallas 1994, writ denied).

## NOVATION

### A. Applicable Law

Novation, or the substitution of a new agreement in place of an existing agreement between the same parties, is an affirmative defense to a claim for breach of contract. *Honeycutt v. Billingsley,* 992 S.W.2d 570, 576–77 (Tex.App.-Houston [1st Dist.] 1999, pet. denied). A novation occurs if a contract evidences an intention to relinquish and extinguish pre-existing claims and rights of action; in lieu of the old obligation, a party accepts the promise of performance of the new obligation instead of the performance itself. *Priem v. Shires,* 697 S.W.2d 860, 863 n. 3 (Tex.App.-Austin 1985, no writ). The novation contract discharges the original obligation and only the new obligation may be enforced. *Id.*

A party raising the defense of novation must prove (1) the validity of a previous obligation; (2) an agreement among all parties to accept a new contract; (3) the extinguishment of the previous obligation; and (4) the validity of the new agreement. *Vickery v. Vickery,* 999 S.W.2d 342, 356 (Tex.1999). "The substitution of a new agreement occurs when a later agreement is so inconsistent with a former agreement that the two cannot subsist together." *Scalise v. McCallum,* 700 S.W.2d 682, 684 (Tex.App.-Dallas 1985, writ ref'd n.r.e.). In the absence of inconsistent provisions, "a second contract will operate as a novation of a first contract only when the parties to both contracts intend and agree that the obligations of the second shall be substituted for and operate as a discharge of the obligations of the first." *Chastain v. Cooper & Reed,* 152 Tex. 322, 325, 257 S.W.2d 422, 424 (1953). Thus, whether a subsequent agreement works a novation of the first is a question of intent. *Allstate Ins. Co. v. Clarke,* 471 S.W.2d 901, 907 (Tex.Civ.App.-Houston [1st Dist.] 1971, writ ref'd n.r.e.)

(citations omitted). It must clearly appear that the parties intended a novation, and novation is never presumed. *Id.* In the absence of express agreement, whether a new contract operates as a novation of an earlier contract is "usually a question of fact, and can only become a question of law when the state of the evidence is such that reasonable minds cannot differ as to its effect." *Chastain,* 152 Tex. at 325, 257 S.W.2d at 424.

## B. Application of Law to the Facts

In its first issue, Fulcrum argues there was no novation as a matter of law. In its second issue, Fulcrum asserts an alternative argument that even if it failed to prove that there was no novation as a matter of law, summary judgment was not proper because it raised fact issues on AutoTester's affirmative defense. We begin by addressing the latter argument.

Because this is an appeal from the trial court's granting of AutoTester's summary judgment motion, we will accept all evidence favorable to Fulcrum as true, indulge Fulcrum with every favorable reasonable inference, and resolve any doubt in Fulcrum's favor. Fulcrum first argues the documents are not inconsistent.

### 1. No Inconsistency

AutoTester argues that the documents "contain such inconsistent provisions that both cannot stand." AutoTester supports this argument by pointing to (1) the different rental amounts, and (2) how each may be terminated. Fulcrum responds by arguing that the documents "do not even address the same subject matter." To illustrate, Fulcrum contends the lease addressed damages for the eight years AutoTester failed to perform, while the letter addressed only AutoTester's short term possession of the premises.

We agree with Fulcrum. It is clear that the parties agreed to the terms of the September 29th letter. However, the September 29th letter does not replace the original lease. The 1998 lease is a complex, fifty-one page document that clearly outlines the landlord's and tenant's rights and responsibilities on hundreds of issues covering such wide-ranging topics as use of the premises, compliance with laws and regulations, waiver of subrogation rights, events of default, assignments and subletting, the need for liability and casualty insurance, and no implied waiver of any rights under the lease by the landlord. In contrast, the September 29th letter is a one page document which memorializes the parties' agreement that AutoTester would be allowed to stay for a nominal fee while it secured new office space. The letter emphasizes the specific need for the continued adherence to certain provisions of the lease by AutoTester. Furthermore, the letter does not discharge AutoTester's original obligation under the lease. It simply says that it "in no way reinstates the lease." Fulcrum's remedies upon default and termination under the 1998 lease remained intact, separate and distinct from its rights and/or duties under the temporary accommodation. The September 29th letter does not contain "terms" for a "new lease" as argued by AutoTester. Hence, we cannot say that the September 29th letter "is so inconsistent" with the 1998 lease "that the two cannot subsist together." *See Scalise,* 700 S.W.2d at 684.

### 2. Fact Issues Raised On Intent

If provisions of two contracts are consistent, "a second contract will operate as a novation of a first contract *only* when the parties to both contracts *intend and agree* that the obligations of the second shall be substituted for *and operate as a discharge of the obligations* of the first." *Chastain,* 152 Tex. at 325, 257 S.W.2d at 424 (empha-

sis added). Fulcrum claims it raised a fact issue on the following three grounds to defeat AutoTester's affirmative defense: (1) there was no proof that the parties intended the accommodation agreement to be a novation; (2) there was no consideration for the novation; and (3) there was no "extinguishment" of the old contract. Because we agree that fact issues exist on the parties' intent, we need not address Fulcrum's remaining grounds.

Fulcrum argues that the face of the two documents reveals that the parties did not intend the accommodation agreement to be a novation. Fulcrum points to the lack of any words on the September 29th letter that even impliedly indicate a "novation," such as "discharge," "extinguish," "settlement," or "release." We are mindful that no such words are required to effect a novation. *See Flanagan v. Martin*, 880 S.W.2d 863, 867 (Tex. App.-Waco 1994, writ dism'd w.o.j.). Nonetheless, we agree that the summary judgment evidence does not establish as a matter of law that the parties intended a novation.

First, Fulcrum presented deposition testimony from its property management director, Bill Moebius, that he sent the September 29th letter "to provide [Auto-Tester] some accommodation for being able to stay in the space so they could make an orderly move out." Moebius also testified that there was no reference to pursuing damages under the 1998 lease because the parties "viewed [it] as a side letter and accommodation for [AutoTester] to stay in the space and didn't necessarily relate to [damages]." Second, the affidavit of AutoTester's president O'Halloran contains her admission that the September 29th letter was a response to her request that Fulcrum "allow AutoTester to continue to occupy the space to give AutoTester time to find new office space."

Finally, Fulcrum noted that there was at least a fact issue as to whether AutoTester's conduct after the alleged novation was consistent with its claim that there was a novation. Specifically, Fulcrum argued that if AutoTester had thought the parties agreed to a novation, which would have relieved it of *all* its previous obligations under the 1998 lease, it never would have paid Fulcrum $74,174.77 in back rent *after* it signed the "novation." Likewise, it is just as factually questionable why AutoTester would move out of over 37,000 square feet of office space it was "leasing" for a mere one dollar a day if it really thought the parties were operating under a "new lease."

We conclude AutoTester failed to establish, as a matter of law, that the parties intended the September 29th letter to constitute a novation of the lease. In so holding, we are mindful that in the absence of an express agreement, whether the parties intended a novation is usually a question of fact. *See Chastain*, 152 Tex. 322, 257 S.W.2d 422, 424 (1953). At the very least, Fulcrum presented sufficient summary judgment evidence to establish that reasonable minds could differ as to whether the September 29th letter was a novation of the lease. Thus, we resolve Fulcrum's second issue in its favor.

## FULCRUM'S AFFIRMATIVE SUMMARY JUDGMENT GROUNDS

The only issue before us is whether AutoTester established its affirmative defense to Fulcrum's breach of contract claim *as a matter of law*. Nevertheless, in its third issue, Fulcrum argues that if this Court resolves the novation issue in its favor, AutoTester would have no remaining defenses to Fulcrum's motion for summary judgment. Therefore, Fulcrum urges the Court to render judgment in its favor on the "only remaining issue" of

damages. However, as previously discussed, we have only determined that AutoTester has not established its affirmative defense as a matter of law. Therefore, our decision does not resolve the entire case. Moreover, Fulcrum itself notes that a critical element of its damages claim is the calculation of fair market value. The summary judgment evidence shows that both parties' experts disagree on that point. Thus, we decline to render judgment in Fulcrum's favor. Accordingly, we resolve Fulcrum's third issue against it.

### CONCLUSION

We hold that AutoTester did not establish that it was entitled to the affirmative defense of novation as a matter of law. Fulcrum offered sufficient summary judgment evidence that the documents are not inconsistent and that there was no intent by the parties to create a novation. Therefore, the trial court erred in granting summary judgment in AutoTester's favor. Having resolved Fulcrum's second issue in its favor, we need not address its first, and we resolve its third issue relating to rendering judgment for damages against it.

We reverse and remand for further proceedings consistent with this opinion.