*Court Of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*


# MEMORANDUM OPINION

No. 04-09-00105-CV

Arnoldo **CASAS**, et al.,
Appellants

v.

Michael B. **SILVA**, et al.,
Appellees

From the 229th Judicial District Court, Duval County, Texas
Trial Court No. DC-05-43
Honorable Alex W. Gabert, Judge Presiding

Opinion by:  Rebecca Simmons, Justice

Sitting:  Phylis J. Speedlin, Justice
Rebecca Simmons, Justice
Steven C. Hilbig, Justice

Delivered and Filed: February 24, 2010

AFFIRMED

Arnoldo Casas, Carolina Casas f/k/a Carolina Smith, Ferman Casas, Jr., Juanita P. Casas,

Irene Casas, Santos R. Casas, Servando Casas, Johnny Lane, III a/k/a Juan C. Lane, III, Lydia C.

Pena f/k/a Lydia Cantu, Ruben Pulido, Clementina Pulido, and Ruben Casas (collectively the "Casas

Family") appeal a final judgment in a suit involving numerous claims against Michael B. Silva, Paul

F. Simpson, Silva & Simpson, L.L.P., and McGinnis, Lochridge & Kilgore, L.L.P.  The Casas

Family briefs three issues on appeal, asserting the trial court erred by: (1) improperly construing a contingency fee agreement; (2) granting a directed verdict on numerous claims; and (3) excluding the testimony of two witnesses.[1] We affirm the trial court's judgment.

## BACKGROUND

John Mann, an attorney, contacted Silva & Simpson, L.L.P. regarding a potential drainage claim the Casas Family had against Shell Western E&P, Inc. relating to 81 acres of real property the Casas Family owned in Duval County. Shell Western leased the land from the Casas Family but also leased adjacent land. Although Shell Western drilled wells on the adjacent land, no well was drilled on the land owned by the Casas Family, and the Casas Family believed the wells on the adjacent land were draining the gas under the property owned by the Casas Family. Shell Western claimed that the land owned by the Casas Family was not being drained because a lease line fault along the border of the Casas Family's land prevented such drainage. In order to establish a drainage claim, the Casas Family would be required to show that no lease line fault established a barrier to prevent the drainage of the gas under their property. After some preliminary investigation, Silva & Simpson, L.L.P. agreed to represent the Casas Family, and the parties signed a contingency fee agreement in October of 2000.

Shell Western subsequently released its lease on the Casas Family's property, and Silva & Simpson, L.L.P. assisted the Casas Family in negotiating a new lease with David Becker, Inc. Silva testified that the new lease included very favorable provisions for the Casas Family that increased the amount they would be paid under the lease, including: (1) a $100,000.00 bonus; (2) a clause

---

[1] Although the Casas Family lists additional "Issues Presented" in the introductory section of their brief, they only provide argument on these three points of error. *See* TEX. R. APP. P. 38.1(i).

stating that Becker owed the Casas Family a fiduciary duty; (3) a no pooling clause; (4) a 1/4 royalty interest instead of the standard 1/5 royalty interest; and (5) a provision that the Casas Family would not be required to pay transportation costs. Shortly after the Becker lease was signed and the $100,000.00 bonus was paid, the Casas Family paid $25,000.00 to Silva & Simpson, L.L.P. The parties disagree about the manner in which the $25,000.00 payment was calculated. The Casas Family took the position that the $25,000.00 was payment in full for the legal services rendered with regard to the Becker lease. Silva & Simpson, L.L.P. took the position that the $25,000.00 was a 1/3 contingency of the increase in the amount of bonus paid over the $25,000 that the Casas Family was offered before Silva & Simpson, L.L.P.'s negotiation efforts, i.e., ($100,000.00 - $25,000.00) x 1/3 = $25,000.00.

In March of 2001, Silva & Simpson, L.L.P. proposed that its 1/3 contingency fee with regard to the Becker lease could be satisfied by the Casas Family transferring ten percent of the value of the production due the Casas Family based on their royalty interest in the Becker lease if and when produced. Because it appeared that the parties disagreed about the fee owed, Silva & Simpson, L.L.P. suggested that the Casas Family retain independent counsel to represent them in regard to the fee dispute. The Casas Family retained J.G. Adami, Jr.

The lawsuit by the Casas Family against Shell Western proceeded. At the same time, Silva & Simpson, L.L.P. also were representing two other landowners, Weatherby and Benavides, who had similar drainage claims against Shell Western. In September of 2001, Silva and Simpson joined the law firm of McGinnis, Lochridge & Kilgore, L.L.P.

In February of 2004, Silva sent a demand letter to Shell Western with regard to the Casas Family's claims. By February of 2004, the Casas Family had been paid approximately

$3,700,000.00 from the Becker lease production. The demand letter estimated damages at trial to be over $8,000,000.00 but acknowledged that damages at trial would be subject to mitigation for amounts paid for production under the Becker lease. Ultimately, Shell Western settled with the Casas Family for $3,000,000.00.

On May 12, 2004, the Casas Family executed a letter agreement with Silva, Simpson, Silva & Simpson, L.L.P., and McGinnis, Lochridge & Kilgore, L.L.P. (collectively the "Attorneys") intending to "confirm our agreements concerning the subject lawsuit filed in October 2000 [the lawsuit against Shell Western] and the related Contingency Fee Agreement." The letter agreement confirmed the Casas Family's agreement to settle their claims against Shell Western for $3,000,000.00 after the Casas Family consulted with the Attorneys and other counsel. The parties further agreed to divide the $3,000,000.00 settlement such that the Casas Family would receive $1.3 million and the Attorneys would receive $1.7 million. The Attorneys also were responsible for the payment of all of the costs and expenses incurred in connection with the lawsuit. Pursuant to the letter agreement, the Casas Family would not owe, and the Attorneys would not claim, any additional money or other benefit was due under the Contingency Fee Agreement. The letter agreement concluded that upon payment of the amounts due from the settlement, the Contingency Fee Agreement would be terminated.

In March of 2005, the Casas Family sued the Attorneys. The Casas Family asserted numerous claims relating to the actions taken in relation to the lawsuit against Shell Western and the fees paid to the Attorneys. The trial court granted a directed verdict against all of the Casas Family's claims except the claim for breach of fiduciary duty. After the jury found that the Attorneys did not fail to comply with their fiduciary duty, the trial court signed a take nothing judgment.

## CONTINGENCY FEE AGREEMENT

In their first issue on appeal, the Casas Family asserts the trial court erred in construing the Contingency Fee Agreement to entitle the Attorneys to a forty percent contingency fee and a contingency fee on royalty paid from a third party. In the trial court's judgment, the trial court expressly stated that it had ruled that the May 12, 2004 letter agreement between the parties constituted a novation of the Contingency Fee Agreement and/or an accord and satisfaction of the fee dispute between the parties. On appeal, the Casas Family does not challenge this ruling by the trial court.

An accord and satisfaction defense rests upon a new contract in which the parties agree to the discharge of an existing obligation in a manner otherwise than originally agreed. *Richardson v. Allstate Tex. Lloyd's*, 235 S.W.3d 863, 865 (Tex. App.—Dallas 2007, no pet.); *Kerrville HRH, Inc. v. City of Kerrville*, 803 S.W.2d 377, 388 (Tex. App.—San Antonio 1990, writ denied). A novation occurs if a contract evidences an intention to relinquish and extinguish pre-existing claims and rights of action; in lieu of the old obligation, a party accepts the promise of performance of the new obligation. *In re Bath Junkie Franchise, Inc.*, 246 S.W.3d 356, 364 (Tex. App.—Beaumont 2008, orig. proceeding); *Fulcrum Cent. v. AutoTester, Inc.*, 102 S.W.3d 274, 277 (Tex. App.—Dallas 2003, no pet.). An accord and satisfaction can work a novation. *Kerrville HRH, Inc.*, 803 S.W.2d at 388. A novation discharges the original obligation and only the new obligation may be enforced. *In re Bath Junkie Franchise, Inc.*, 246 S.W.3d at 364; *Fulcrum Cent.*, 102 S.W.3d at 277; *Kerrville HRH, Inc.*, 803 S.W.2d at 388.

Because the trial court ruled that the 2004 letter agreement constituted an accord and satisfaction and/or novation of the Contingency Fee Agreement, the Casas Family could not rely on

the terms of the Contingency Fee Agreement to support any claims. The novation extinguished the pre-existing claims and rights of action relating to the Contingency Fee Agreement, so the Casas Family could only enforce performance of the obligations under the 2004 letter agreement. *See In re Bath Junkie Franchise, Inc.*, 246 S.W.3d at 364; *Fulcrum Central*, 102 .W.3d at 277; *Kerrville HRH, Inc.*, 803 S.W.2d at 388. Because the Casas Family's first issue on appeal raises issues pertaining to the interpretation of the Contingency Fee Agreement, the first issue on appeal is overruled.

### DIRECTED VERDICT AND EXCLUSION OF EVIDENCE

In their second issue on appeal, the Casas Family asserts the trial court erred in granting a directed verdict as to numerous claims; however, the arguments in the brief only address the directed verdict as to the Casas Family's claims for: (1) breach of fiduciary duty; (2) fraud; (3) breach of contract; (4) deceptive trade practices; (5) negligence; (6) disgorgement of fees; and (7) conversion. In their third issue on appeal, the Casas Family asserts the trial court erred in excluding the testimony of two witnesses.

With regard to the breach of contract claim, the Casas Family argues the trial court erred in granting a directed verdict on their claims for breach of the Contingency Fee Agreement. As previously noted, however, the trial court ruled that the 2004 letter agreement was an accord and satisfaction and/or novation of the Contingency Fee Agreement. Because the Casas Family does not challenge this ruling, the argument relating to the directed verdict on the breach of contract claim fails. In addition, the record reflects that the Casas Family's breach of fiduciary duty claim was submitted to the jury; therefore, no directed verdict was granted with regard to that claim. Moreover, because the trial court resolves whether and what amount of compensation should be forfeited in the

event of a breach of fiduciary duty, the Casas Family's argument relating to the disgorgement of fees remedy fails. *See Burrows v. Arce*, 997 S.W.2d 229, 246 (Tex. 1999); *Meridien Hotels, Inc. v. LHO Fin. P'ship I, L.P.*, 255 S.W.3d 807, 821 (Tex. App.—Dallas 2008, no pet.). Finally, the Casas Family asserts a directed verdict was erroneous as to their conversion claim because the Attorneys took and used confidential information obtained from Shell Western through discovery in their representation of Weatherby and Benavides against Shell. However, this court previously held that the information in question did not belong to the Casas Family, and the Casas Family had no rights to the confidential information. *In re Shell E & P, Inc.*, 179 S.W.3d 125, 130-31 (Tex. App.—San Antonio 2005, orig. proceeding). Therefore, the trial court properly granted the directed verdict as to the conversion claim.

With regard to the remaining claims, the Casas Family asserts that the trial court erred in directing verdicts as to these claims because evidence was presented as to each element of the claims. With regard to the damages element, the Casas Family asserts that the claims resulted in two distinct types of damages. First, the Casas Family asserts they were over-charged more than $500,000.00 in attorney fees. Second, the Casas Family asserts they settled over $8,000,000.00 in claims against Shell for $3,000,000.00.

With regard to the claims the Casas Family asserts resulted in their being over-charged attorney's fees, all of these claims were resolved by the accord and satisfaction. *See Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 863 (Tex. 2000) (noting affirmative defense of accord and satisfaction could arguably defeat tort claims)*; Harris, Upham & Co. v. Ballantyne*, 538 S.W.2d 153, 158 (Tex. Civ. App.—Dallas 1976, no writ) (noting accord is agreement relating to claim arising in either contract or tort); *Marsalis v. Garre*, 391 S.W.2d 522, 525 (Tex. Civ. App.—Amarillo 1965,

writ ref'd n.r.e.) ("Claims arising out of the commission of a tort are particularly applicable subjects for accord and satisfaction."). With regard to the claims the Casas Family asserts resulted in their being damaged by settling clams worth $8,000,000.00 for $3,000,000.00, a cause of action arising out of bad legal advice or improper representation is legal malpractice. *Greathouse v. McConnell*, 982 S.W.2d 165, 172 (Tex. App.—Houston [1st Dist.] 1998, pet. denied). Although the Casas Family alleged separate and distinct causes of action, the crux of each of those claims is that the Attorneys did not provide adequate legal representation to the Casas Family in relation to the settlement. *Id*. We hold that the various claims alleged by the Casas Family amounted to nothing more than allegations of legal malpractice, and, therefore, the trial court properly granted the directed verdict if the Casas Family failed to introduce evidence to support a legal malpractice claim which, in Texas, is based on negligence. *See Hall v. Rutherford*, 911 S.W.2d 422, 424 (Tex. App.—San Antonio 1995, writ denied).

The elements of a legal malpractice claim are: (1) a duty, (2) a breach of duty, (3) the breach proximately caused the injury, and (4) resulting damages. *Id*. When a legal malpractice claim arises from prior litigation, the plaintiff has the burden to prove that but for the attorney's negligence, he or she would be entitled to judgment, and to show what amount would have been recovered in the judgment. *Id*. In Texas, a lawyer is held to the standard of care that would be exercised by a reasonably prudent attorney. *Id*. Therefore, expert testimony of an attorney is necessary to establish the standard of skill and care ordinarily exercised by an attorney. *Id*.

In this case, the Casas Family did not offer any expert testimony regarding the standard of care that the Attorneys should have exercised. Moreover, based on the offers of proof, neither of the witnesses whose testimony the trial court excluded intended to provide such expert testimony.

Therefore, even assuming the trial court erred in excluding the testimony of those two witnesses, such error would be harmless. TEX. R. APP. P. 44.1(a). Because the Casas Family did not offer expert testimony to establish the standard of skill and care that should have been exercised by the Attorneys, the trial court did not err in granting a directed verdict as to the Casas Family's remaining claims. The Casas Family's second and third issues on appeal are overruled.

## CONCLUSION

The trial court's judgment is affirmed.

Rebecca Simmons, Justice