**Affirmed and Opinion Filed September 30, 2021**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-21-00003-CV

## FEE, SMITH, SHARP & VITULLO, LLP, JOHN L. MALESOVAS D/B/A MALESOVAS LAW FIRM, AND ANTHONY VITULLO, Appellants
## V.
## DEANA STRUNK AND CECIL WEBER ("SCOTT") CASTERLINE III, Appellees

### On Appeal from the 162nd Judicial District Court
### Dallas County, Texas
### Trial Court Cause No. DC-20-05323

## MEMORANDUM OPINION

Before Justices Myers, Partida-Kipness, and Carlyle
Opinion by Justice Partida-Kipness

In this interlocutory appeal, appellants contend the trial court abused its discretion in denying their motion to compel arbitration. Appellees contend, however, the trial court did not abuse its discretion because the parties executed a subsequent agreement to litigate the claims at issue in court, and appellants breached the arbitration agreement and waived their right to arbitration. We affirm the trial court's order.

# BACKGROUND

Appellant attorneys and law firms (collectively, the FSSV parties) provided legal services to appellee Deana Strunk in matters surrounding the settlement of her deceased husband's estate. Strunk and the FSSV parties executed a contingent-fee contract in May 2018 to evaluate possible claims against Strunk's family members for alleged improper distribution of community assets and contesting her husband's will. The contract contained an arbitration provision stating:

> It is Attorney's goal to maintain at all times a constructive and positive relationship with Client on the matter described above and on future matters in which Attorney may perform services for Client. However, should a dispute and/or claim arise between Attorney and Client, a prompt and fair resolution is in the interests of all concerned. To this end, if any controversy or claim arises out of or is related to this agreement, any services provided by Attorneys to Client in connection with Client's Claims, or any other matter that may arise between Client and Attorney (including malpractice claims and fee disputes), Attorneys and Client both waive any right to bring a court action or have a jury trial and agree that the dispute shall be submitted to binding arbitration to be conducted in the state of Texas before the American Arbitration Association ("AAA") in accordance with the Commercial Arbitration Rules of the AAA with one arbitrator who must be an attorney licensed to practice law in the State of Texas. Arbitration means that no lawsuit can be filed by any party, the arbitration will be conducted privately, discovery may be limited, and any arbitration decision is not appealable.

The FSSV parties represented Strunk in various capacities concerning the distribution of the estate and Strunk's claims against the estate and family members. After Strunk reached a settlement with the estate and family members, the FSSV parties attempted to collect contingent fees under the contract. Strunk refused to pay, and the FSSV parties initiated an arbitration proceeding on March 26, 2020. The

FSSV parties and Strunk then attempted to mediate the fee dispute on April 6, 2020. During mediation, Strunk asserted that the arbitration provision was unenforceable, and the parties failed to reach a settlement. That same day, the FSSV parties filed this lawsuit against appellees (collectively, the Strunk parties). The FSSV parties alleged that Strunk breached the contract by refusing to pay the FSSV parties' fees and that appellee Cecil Weber Casterline, III, one of Strunk's sons, tortiously interfered with the contract by encouraging Strunk not to pay the FSSV parties' fees.

On April 8, 2020, two days after the FSSV parties filed their original petition, appellant John L. Malesovas e-mailed a copy of the petition and a letter to Strunk's and Casterline's attorneys. In the letter, Malesovas asked whether Strunk and Casterline wished to address the FSSV parties' claims in court or arbitration. In pertinent part, the letter stated:

> [I]f Deana Strunk feels that arbitration of our demand for payment of our fee due under our contingent fee contract is not in her best interest based on the advice of her current attorneys, Richard Leshin and John McShane, we are willing to litigate this matter in court rather than before AAA. Towards that end, we have filed the attached lawsuit in District Court.
>
> Please discuss with your clients and let us know which forum they wish to use to address this matter. If they choose to litigate in District Court, then please advise if you will agree to accept service of the enclosed petition on behalf of all Defendants effective as of this date and assuming you agree, we will dismiss the AAA arbitration without prejudice. If your clients prefer to litigate this matter on behalf of all Defendants before AAA, then please confirm your agreement to arbitrate with AAA on behalf of all Defendants and provide proposed dates and times next week to have our initial conference with Andrew Barton per his letter request last week and we will then nonsuit the lawsuit without prejudice.

Please let us know your position on this by close of business tomorrow, April 9, 2020.

Leshin informed Malesovas on April 9, 2020, that Strunk and Casterline "wish to address your demand for legal fees in the State of Texas District Court." Malesovas replied and asked Leshin to confirm he was accepting service for the Strunk parties. Leshin replied that he was not authorized to accept service because he was not the "trial lawyer on this matter." Malesovas sent a second reply, indicating that the FSSV parties were "willing to dismiss the AAA arbitration upon confirmation that someone is accepting service of the lawsuit." He then asked Leshin, "Please let me know who the trial lawyer is[,] and I will see if they are willing to accept service." There was no further communication between Malesovas and Leshin. The record reflects that, despite Malesovas's April 8, 2020 request for an attorney to accept service for the Strunk parties, the FSSV parties had already ordered citation for service to Strunk and Casterline personally on April 7, 2020. Each was personally served on April 13, 2020.

The Strunk parties filed an answer and motion to transfer venue on May 4, 2020. Their new trial counsel also sent an e-mail to the FSSV parties on May 4, 2020, stating his "understanding that after filing a notice of arbitration with the AAA, the parties agreed to pursue their respective claims in Court" and notifying the FSSV parties of the Strunk parties' motion and answer. Appellant Anthony Vitullo responded that "in light of [the Strunk parties'] filing today, [the FSSV parties] will be seeking to pursue claims in arbitration."

–4–

Strunk also filed suit against the FSSV parties in Aransas County, Texas, on May 4, 2020, alleging breach of fiduciary duty, negligent misrepresentation, fraud, DTPA violations, unfair debt collection practices, and breach of contract. Ten days later, on May 14, 2020, she filed a second amended petition in Aransas County, seeking a declaratory judgment, a temporary restraining order, and a temporary injunction to prevent the FSSV parties from proceeding with their claims in arbitration. That same day, the Aransas County court issued an ex parte order granting the temporary restraining order and setting a hearing on the application for a temporary injunction.

The next day, on May 15, 2020, the FSSV parties filed their first amended petition, dropping their claim against Casterline and adding a declaratory judgment action seeking a declaration that the arbitration provision is enforceable and compelling Strunk to arbitrate the FSSV parties' claim against her. The FSSV parties also filed a motion to compel arbitration. Strunk responded to the FSSV parties' motion. The trial court heard the FSSV parties' motion to compel arbitration and the Strunk parties' motion to transfer venue. The trial court denied both motions, and this appeal followed.

## STANDARD OF REVIEW

We review a denial of a motion to compel arbitration for an abuse of discretion, reviewing questions of law de novo and factual determinations under a no-evidence standard of review. *Sidley Austin Brown & Wood, L.L.P. v. J.A. Green*

*Dev. Corp.*, 327 S.W.3d 859, 863 (Tex. App.—Dallas 2010, no pet.). Because the trial court did not enter findings of fact or conclusions of law to explain its denial of the motion to compel, we must uphold the trial court's decision on any appropriate legal theory urged below. *Bonded Builders Home Warranty Assn. of Tex. v. Rockoff*, 509 S.W.3d 523, 531–32 (Tex. App.—El Paso 2016, no pet.). Accordingly, we review the trial court's decision in light of the grounds presented below by the party resisting arbitration. *Cardwell v. Whataburger Rests., L.L.C.*, 484 S.W.3d 426, 428 (Tex. 2016); *Ridge Nat. Res. LLC v. Double Eagle Royalty, L.P.*, 564 S.W.3d 105, 118 (Tex. App.—El Paso 2018, no pet).

## ANALYSIS

In their sole issue on appeal, the FSSV parties contend the trial court abused its discretion in denying their motion to compel arbitration. The FSSV parties specifically contend they established that a valid arbitration agreement existed; the agreement encompassed their claim against Strunk; they did not expressly or impliedly waive arbitration by substantially invoking the judicial process; and Strunk was not prejudiced by their invoking the judicial process.

The party attempting to compel arbitration must establish (1) an arbitration agreement exists and (2) the dispute falls within the scope of the agreement. *In re D. Wilson Const. Co.*, 196 S.W.3d 774, 781 (Tex. 2006) (orig. proceeding). In this case, the parties do not dispute that an arbitration agreement exists, and the dispute falls within the scope of the agreement. Thus, the burden was on the Strunk parties to

establish an affirmative defense to arbitration. *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 754 (Tex. 2001) (orig. proceeding). The Strunk parties asserted three defenses in response to the FSSV parties' motion: novation, the FSSV parties' breach and revocation of the arbitration provision, and the FSSV parties' waiver by substantially invoking the judicial process. We address each defense in order.

## I.  Novation

In their response to the FSSV parties' motion to compel arbitration, the Strunk parties asserted that the parties executed a novation in which they agreed to resolve their dispute in court. The FSSV parties agree they made an offer to allow the Strunk parties to choose the forum, but they contend there was no novation because the Strunk parties did not accept all conditions of the offer.

Parties to an arbitration agreement can agree to modify or supersede their arbitration agreement. *Roehrs v. FSI Holdings, Inc.*, 246 S.W.3d 796, 808 (Tex. App.—Dallas 2008, pet. denied); *Adcock v. Five Star Rentals/Sales, Inc.*, No. 04-17-00531-CV, 2018 WL 1831646, at *2 (Tex. App.—San Antonio Apr. 18, 2018, no pet.) (mem. op.). A novation, or the substitution of a new agreement, occurs when a contract evinces "an intention to relinquish and extinguish pre-existing claims and rights of action; in lieu of the old obligation, a party accepts the promise of performance of the new obligation instead of the performance itself." *Fulcrum Cent. v. AutoTester, Inc.*, 102 S.W.3d 274, 277 (Tex. App.—Dallas 2003, no pet.). "The

novation contract discharges the original obligation and only the new obligation may be enforced." *Id.*

A novation requires (1) a previous, valid obligation; (2) a mutual agreement of the parties to the acceptance of a new contract; (3) the extinguishment of the old contract; and (4) the validity of the new contract. *Vickery v. Vickery*, 999 S.W.2d 342, 356 (Tex. 1999); *In re B.N.L.-B.*, 523 S.W.3d 254, 264 (Tex. App.—Dallas 2017, no pet.). "The substitution of a new agreement occurs when a later agreement is so inconsistent with a former agreement that the two cannot subsist together." *Fulcrum Cent.*, 102 S.W.3d at 277 (quoting *Scalise v. McCallum*, 700 S.W.2d 682, 684 (Tex. App.—Dallas 1985, writ ref'd n.r.e.)). A novation is never presumed, thus the parties' intent to novate must be clear. *In re B.N.L.-B.*, 523 S.W.3d at 264; *Fulcrum Cent.*, 102 S.W.3d at 277–78. Whether a new contract operates as a novation of an earlier contract is usually a question of fact and becomes a question of law only "when the state of the evidence is such that reasonable minds cannot differ as to its effect." *In re B.N.L.-B.*, 523 S.W.3d at 264 (quoting *Fulcrum*, 102 S.W.3d at 278).

The Strunk parties contend the parties entered into a novation to resolve the fee dispute in court after mediation failed. The FSSV parties admit that they offered to litigate the matter in court but contend that the Strunk parties did not accept all material conditions of the offer. According to the FSSV parties, the offer was conditioned upon the Strunk parties' attorney accepting service and agreeing to

litigate in Dallas County, and neither condition was accepted by the deadline stated in Malesovas's e-mail. Thus, the FSSV parties contend the parties did not reach a meeting of the minds necessary to form a novation. The Strunk parties disagree and assert that acceptance of service was merely a subsequent logistical detail and there was no condition that litigation be limited to Dallas County. We agree with the Strunk parties.

"When a contract's meaning is disputed, our primary objective is to ascertain and give effect to the parties' intent as expressed in the instrument." *URI, Inc. v. Kleberg Cnty.*, 543 S.W.3d 755, 763–64 (Tex. 2018) (citing *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex. 2005)). "Objective manifestations of intent control, not 'what one side or the other alleges they intended to say but did not.'" *Id*. (quoting *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 127 (Tex. 2010)). "We therefore 'presume parties intend what the words of their contract say' and interpret contract language according to its 'plain, ordinary, and generally accepted meaning' unless the instrument directs otherwise." *Id*. at 764 (quoting *Gilbert Tex. Constr.*, 327 S.W.3d at 126, and *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996)). We construe the parties' words "in the context in which they are used," which encompasses "the circumstances present when the contract was entered." *Id*. (quoting *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996)).

The parties' disagreement revolves around the third paragraph of Malesovas's letter:

> Please discuss with your clients and let us know which forum they wish to use to address this matter. If they choose to litigate in District Court, then please advise if you will agree to accept service of the enclosed petition on behalf of all Defendants effective as of this date and assuming you agree, we will dismiss the AAA arbitration without prejudice. If your clients prefer to litigate the matter on behalf of all Defendants before AAA, then please confirm your agreement to arbitrate with AAA on behalf of all Defendants and provide proposed dates and times next week to have our initial conference with Andrew Barton per his letter request last week and we will then nonsuit the lawsuit without prejudice.

By its plain language, the first sentence of this paragraph constitutes an offer to allow the Strunk parties to choose the forum for resolving the fee dispute. *See URI, Inc.*, 543 S.W.3d at 764. The remainder of the paragraph and the parties' communications further demonstrate that this is the only material term of the offer.

The FSSV parties contend the second sentence conditioned the offer on acceptance of service by the Strunk parties' attorney. Employing the conjunctive "if," however, the second and third sentences merely provide alternative subsequent actions to be taken based on the Strunk parties' forum choice. *See If*, Merriam-Webster, https://www.merriam-webster.com/dictionary/if (last visited on September 21, 2021) (defining "if" as "in the event that," "allowing that," "on the assumption that," or "on condition that"). And the "acceptance of service" clause is further predicated on the Strunk parties' "cho[ice] to litigate in District Court" via the adverb "then." *See Then*, Merriam-Webster, https://www.merriam-

–10–

webster.com/dictionary/then (last visited on September 21, 2021) (defining "then" as "soon after that" or "next in order of time"). The letter contains no indication that the Strunk parties' forum choice is dependent on the acceptance of service or that failure to accept service will invalidate the Strunk parties' forum choice.

The record contains additional evidence that the offer was not conditioned on acceptance of service. *See URI, Inc.*, 543 S.W.3d at 763–64 (we consider "the circumstances present when the contract was entered"). Specifically, Malesovas reiterated in his e-mail exchange with Leshin that the FSSV parties were willing to dismiss the arbitration "upon confirmation that someone is accepting service" and asked who the Strunk parties' trial lawyer was so he could "see if they are willing to accept service." Malesovas raised no concern that the Strunk parties' acceptance was inadequate or that the parties had not reached an agreement to litigate in court. Indeed, the FSSV parties ordered citations for personal service on the Strunk parties on April 7, 2020, the day before Malesovas's letter. The Strunk parties were personally served on April 13, 2020, four days after Malesovas's and Leshin's e-mail exchange.

The record does not reflect any communication between the parties from April 9, 2020, until Vitullo's May 4, 2020 e-mail indicating the FSSV parties would pursue arbitration in response to the Strunk parties' answer and motion to transfer venue. There is no record that, during this time, the FSSV parties responded to the arbitrator's request for an initial conference or otherwise continued to pursue

–11–

arbitration. This raises an inference that, during this time, the FSSV parties had treated Leshin's response as acceptance of the offer to litigate in court, even though the Strunk parties did not provide an attorney to accept service.

The FSSV parties also contend that the offer was only to "litigate in Dallas County District Court," and, as evidenced by the Strunk parties' motion to transfer venue, the Strunk parties did not agree to this condition. According to the FSSV parties, the inclusion of their petition in Malesovas's e-mail "clearly and unambiguously conveyed an offer to dismiss the AAA arbitration without prejudice *if* Strunk's counsel agreed to accept service of the petition filed in the district court of Dallas County." The offer letter, however, contains no reference to "Dallas County District Court." Nor does it stipulate that the Strunk parties waive their right to seek transfer. Rather, it merely conditioned the parties' subsequent actions on the Strunk parties "cho[ice] to litigate in District Court." Leshin's response that the Strunk parties "wish to address your demand for legal fees in the State of Texas District Court" mirrored this language. *See French v. Henson*, No. 05-06-01036-CV, 2008 WL 2266119, at *2 (Tex. App.—Dallas June 4, 2008, no pet.) (mem. op.) ("The acceptance must be identical with the offer.") (citing *Gilbert v. Pettiette*, 838 S.W.2d 890, 893 (Tex. App.—Houston [1st Dist.] 1992, no writ)).

On the record before us, we conclude the parties' intent to novate is clear, *see In re B.N.L.-B.*, 523 S.W.3d at 264, and the parties entered into a novation to resolve their fee dispute in court.

## II.     Breach

The Strunk parties also asserted below that the FSSV parties materially breached the arbitration provision by disclosing private information in their court filings in violation of the arbitration provision's privacy requirement. The FSSV parties contend, however, they did not breach the arbitration provision because merely filing a petition does not waive arbitration and they only filed the petition after Strunk refused to participate in arbitration. As to the alleged disclosure, the FSSV parties contend they only disclosed the information in response to Strunk's motion to transfer venue. Thus, according to the FSSV parties, Strunk "manufactured" the material breach. We need not address the Strunk parties' argument, however, because the alleged disclosure of private information occurred after the parties executed a novation and Strunk answered the FSSV parties' lawsuit. Accordingly, any subsequent breach of the arbitration provision would be irrelevant. *See Fulcrum Cent.*, 102 S.W.3d at 277 ("The novation contract discharges the original obligation and only the new obligation may be enforced.").

## III.     Waiver

Finally, the Strunk parties asserted below that the FSSV parties had waived arbitration by substantially invoking the judicial process to Strunk's detriment. There is a strong presumption against waiver of arbitration. *Perry Homes v. Cull*, 258 S.W.3d 580, 589–90 (Tex. 2008). However, a party may waive arbitration "by substantially invoking the judicial process to the other party's detriment or

–13–

prejudice." *Id.*; *Seven Hills Commercial, LLC v. Mirabal Custom Homes, Inc.*, 442 S.W.3d 706, 721 (Tex. App.—Dallas 2014, pet. denied). Waiver on this basis is rarely found and depends exclusively on the facts of the case. *See Perry Homes*, 258 S.W.3d at 589–92. Because the party must "substantially" invoke the judicial process, merely filing suit, requesting limited discovery, or filing procedural or jurisdictional motions is not sufficient to find waiver. *See id.*

The Strunk parties contend that the FSSV parties "substantially invoked the judicial process both through their public disclosures of Ms. Strunk's confidential information, and also through their gamesmanship in repeatedly switching between judicial and arbitral proceedings." According to the Strunk parties, the FSSV parties gained "publicity advantage" through their court filings they could not have obtained in private arbitration. This alleged advantage does not fall into the factors we consider when determining whether a party has substantially invoked the judicial process. *See Perry Homes*, 258 S.W.3d at 590–91 (factors concern degree to which the party used the judicial process to address its claims, to delay resolution of its claims, or to gain a tactical advantage through discovery); *Seven Hills*, 442 S.W.3d at 721 (same).

Regarding the FSSV parties' alleged "gamesmanship," a party may not have it both ways by switching between litigation and arbitration to its own advantage. *See Perry Homes*, 258 S.W.3d at 597. However, switching forum positions is not sufficient alone to demonstrate that the opposing party has been prejudiced by a

party's invoking of judicial process. *See id*. Rather, the party must "purposefully and unjustifiably . . . manipulate the exercise of its arbitral rights simply to gain an unfair tactical advantage over the opposing party." *See id*. (concluding that party impermissibly manipulated litigation by switching positions to obtain discovery under one set of rules then seeking arbitration under another set, and delaying disposition by switching to arbitration when trial was imminent and arbitration was not); *see also Seven Hills*, 442 S.W.3d at 721 ("The judicial process is substantially invoked when the party seeking arbitration has taken specific and deliberate actions, after the filing of the suit, that are inconsistent with the right to arbitrate or has actively tried, but failed, to achieve a satisfactory result through litigation before turning to arbitration.").

Although the FSSV parties switched positions regarding forum, there is no evidence that they did so to gain an unfair tactical advantage. The record reflects that the FSSV parties opened arbitration on March 26, 2020, and filed this lawsuit on April 6, 2020, only when mediation proved unfruitful. After Strunk filed her motion to transfer venue, the FSSV parties filed their first amended petition and motion to compel arbitration on May 15, 2020. Thus, only five weeks elapsed between the filing of the FSSV parties' original petition and motion to compel arbitration. The FSSV parties did not file any dispositive motions or issue any discovery requests during that time. *See Seven Hills*, 442 S.W.3d at 721 (including dispositive motions and discovery requests among factors supporting waiver). The record does not

–15–

reflect that the FSSV parties abused the litigation process to gain an unfair tactical advantage. *See Perry Homes*, 258 S.W.3d at 597; *Seven Hills*, 442 S.W.3d at 721.

Although the record does not reflect that the FSSV parties waived arbitration by substantially invoking the judicial process, the parties novated their arbitration agreement. Thus, the trial court did not abuse its discretion in denying the FSSV parties' motion to compel arbitration, and we overrule the FSSV parties' sole issue on appeal.

## CONCLUSION

On the record before us, we conclude the trial court did not abuse its discretion in denying the FSSV parties' motion to compel arbitration. Accordingly, we affirm the trial court's order.

/Robbie Partida-Kipness/
ROBBIE PARTIDA-KIPNESS
JUSTICE

210003F.P05



# Court of Appeals
# Fifth District of Texas at Dallas
## JUDGMENT

FEE, SMITH, SHARP & VITULLO,
LLP, JOHN L. MALESOVAS
D/B/A MALESOVAS LAW FIRM,
AND ANTHONY VITULLO,
Appellants

No. 05-21-00003-CV     V.

DEANA STRUNK AND CECIL
WEBER ("SCOTT") CASTERLINE
III, Appellees

On Appeal from the 162nd Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-20-05323.
Opinion delivered by Justice Partida-
Kipness. Justices Myers and Carlyle
participating.

In accordance with this Court's opinion of this date, the judgment of the trial
court is **AFFIRMED**.

It is **ORDERED** that appellee DEANA STRUNK AND CECIL WEBER
("SCOTT") CASTERLINE III recover their costs of this appeal from appellant
FEE, SMITH, SHARP & VITULLO, LLP, JOHN L. MALESOVAS D/B/A
MALESOVAS LAW FIRM, AND ANTHONY VITULLO.

Judgment entered September 30, 2021.