## IN the INTEREST OF B.N.L.-B., a Child

No. 05–16–00025–CV

Court of Appeals of Texas, Dallas.

Opinion Filed May 10, 2017

Rehearing Overruled June 15, 2017

Michelle May O'Neil, Ashley B. Russell, O'Neil Wysocki, P.C., Dallas, TX, for Mark Aguirre.

Julie H. Quaid, Charles Joseph Quaid, Quaid Farish, LLC, Dallas, TX, for Colleen Logan.

William E. Sollows, Attorney at Law, Dallas, TX, Lisa E. McKnight, Law Office of Lisa McKnight, Dallas, Arlington, TX, for Deborah Bloom.

Before Justices Lang–Miers and Myers [1]

1. Justice Martin Richter was a member of the panel and participated in the submission of this case; however, he did not participate in the issuance of this opinion. *See* Tex. R. App. P. 41.1(a).

## OPINION

Opinion by Justice Myers

Colleen Logan appeals the trial court's order modifying a previous possession order and giving appellee Mark Aguirre additional possession time with the child, B.N.L.-B. Logan brings eight issues asserting the trial court lacked jurisdiction to render the orders in this case, abused its discretion by awarding Aguirre rights and duties concerning the child as well as additional access and possession of the child, and abused its discretion by denying Logan's claim for breach of contract and her request for attorney's fees. We affirm the trial court's judgment.

## BACKGROUND

In 2001, Logan and Deborah Bloom were in what they characterized as a committed relationship, and they decided to have a child. They entered into the Donor Agreement with Aguirre to donate his sperm that would be used for Bloom to conceive a child. The agreement provided that Aguirre would not be a parent and that Logan and Bloom would not seek child support from him. Aguirre agreed "that he will not demand, request, or compel any guardianship, custody or visitation rights with respect to the Child(ren)" and he will not "claim any parental or paternal rights with respect to the Child(ren), except upon the death of both [Bloom] and [Logan]." Aguirre agreed to the termination of his parental rights and agreed to support adoption of the child by Logan. The parties also agreed that if Aguirre "seeks to establish a legal relationship" with the child, then he would indemnify Logan and Bloom for all costs they in-

curred in defending the action, including paying their attorney's fees.

The insemination procedure was successful, and the child was born in 2002. Logan adopted the child in 2003. The adoption order contained the finding, "there is no father of the child in accordance with section 151.101 of the Texas Family Code." [2]

## Virginia Litigation and Consent Order

After Logan adopted the child, Logan, Bloom, and the child moved to Virginia. Aguirre lived nearby in Washington, D.C. Logan and Bloom allowed Aguirre to have limited possession of the child. Aguirre brought suit against Logan and Bloom in Virginia seeking to put in writing the agreements they had made for Aguirre's possession of the child.[3] That suit was settled in May 2007 by the parties' signing a "Consent Order" agreeing to give Aguirre possession of the child for the third weekend of each month after Logan, Bloom, and the child moved to Dallas in September 2007.

## Dallas Litigation 2007 to 2009

After Logan and Bloom returned to Texas, they separated. They also refused to allow Aguirre to have possession of the child for one weekend per month as provided in the Consent Order. Aguirre registered the Consent Order in a Dallas County court as a foreign judgment. In October 2007, Aguirre filed a motion for clarification and modification of the terms of the Consent Order seeking to make it sufficiently specific to be enforceable by contempt. The trial court signed temporary orders on December 5, 2007. In those orders, the court overruled Logan and

---

2. Family Code section 151.101 was repealed in 2001 and replaced by sections 160.702 and .703. *See* TEX. FAM. CODE ANN. §§ 160.702, .703 (West 2014).

3. The pleadings in that suit are not in the record; however, Aguirre testified at the March 23, 2015 hearing on temporary orders to the nature of the lawsuit.

Bloom's objection to the registration of the Consent Order as a foreign judgment and ruled that it was "duly registered as an enforceable order of this Court." The court also clarified the Consent Order by specifying the place where the exchange of possession of the child was to take place.

On May 22, 2008, Bloom filed her petition in suit affecting the parent–child relationship (SAPCR) asserting she and Logan were separated and requesting the court appoint her sole managing conservator and order Logan to pay child support, provide health insurance, and pay for other expenses of the child. Logan filed a counterpetition requesting she be appointed sole managing conservator and that Bloom be ordered to pay child support. On June 30, Aguirre filed a petition in intervention in the SAPCR requesting that he be made a joint managing conservator of the child with Logan and Bloom and that he have the exclusive right to determine the child's primary residence. In the alternative, Aguirre asked that he be appointed a nonparent joint managing or possessory conservator and that he be awarded possession of the child equivalent to the periods awarded under the Family Code's Standard Possession Order. The trial court signed temporary orders on July 9 giving Bloom primary possession of the child, giving Logan possession of the child two weekends each month, and giving Aguirre possession for one weekend each month. Logan filed a plea to the jurisdiction asserting Aguirre did not have standing to intervene in her and Bloom's SAPCR.

On December 9, 2008, Logan and Bloom signed a settlement agreement resolving their competing claims in the SAPCR. They agreed they would be joint managing conservators and that Logan would have possession of the child each Thursday and on the second, fourth, and fifth weekends of each month. Concerning Aguirre, they agreed he would have possession of the child only by their mutual agreement. They also agreed that if the court awarded Aguirre weekend possession of the child, they would alternate the parent from whose weekend Aguirre's possession would be taken.

On May 11, 2009, the court ruled on Logan's plea to the jurisdiction challenging Aguirre's standing in his suit for intervention in Logan's and Bloom's SAPCR. The court ruled that Aguirre did not have standing to file his suit for intervention under sections 102.003(a)(3), (9) or 156.002(a), (b), but the court ruled Aguirre did have standing to file his suit for intervention under section 102.004(b) as a person with substantial past contact with the child.

Logan and Bloom reached a settlement with Aguirre on his petition for intervention. They agreed to Aguirre's having possession of the child from 8:30 a.m. on Saturday to 8:00 p.m. on Sunday for one weekend per month, namely, the second weekend in odd-numbered months (Logan's weekend) and the third weekend in even-numbered months (Bloom's weekend). Aguirre was not to take the child out of Dallas County and into a contiguous county except to see the child's counselor without the prior approval of whichever parent last had possession of the child, and he could not take the child outside the contiguous counties of Dallas County without the prior approval of both parents. The parties did not reach a settlement on whether Aguirre should be required to pay Logan's and Bloom's attorney's fees.

On May 14, 2009, the court signed its final order, which incorporated the parties' agreements and ordered Aguirre to pay Logan's and Bloom's attorney's fees. Aguirre appealed the final order's award of attorney's fees, but Logan and Bloom did not appeal the order. This Court re-

versed the amount of attorney's fees awarded to Logan and remanded that issue for further proceedings. In all other respects, we affirmed the May 14, 2009 order. *See In re B.N.L.-B.*, 375 S.W.3d 557 (Tex. App.-Dallas 2012, no pet.).

### Dallas Litigation 2014 to 2016

In July 2014, Aguirre filed a petition to modify the May 14, 2009 order. Aguirre requested he be appointed a nonparent possessory conservator. He also requested that the court modify the periods of his possession by switching the order of weekends he would have possession of the child[4] and that the court remove the restrictions on his ability to take the child out of Dallas County during his periods of possession. Logan filed a plea to the jurisdiction asserting that Aguirre, as a donor under the assisted-reproduction statute, did not have standing. Logan also asserted that the trial court's prior orders awarding Aguirre possession were void because the court had no subject-matter jurisdiction over Aguirre's claims. Logan also filed a motion to dismiss the May 14, 2009 order.

On November 7, 2014, the trial court notified the parties that it would deny Logan's plea to the jurisdiction and motion to dismiss Aguirre's petition for modification. On December 9, 2014, Logan filed a counterclaim against Aguirre for breaching the Donor Agreement, and she sought specific performance of that agreement's provisions that Aguirre would pay all of Logan's costs for defending against Aguirre's claims. Logan also requested a declaratory judgment that Aguirre's actions in the case constituted a breach of the Donor Agreement.

4. Aguirre testified that changing his possession to the second weekend in even-numbered months and the third weekend in odd-numbered months would eliminate many of the

On July 23, 2015, the court signed orders denying Logan's plea to the jurisdiction, her motion to dismiss Aguirre's pleadings, and her motion to vacate the May 14, 2009 order. That same day, the court signed temporary orders giving Aguirre possession of the child for one weekend per month from the time school let out on Friday (or 3:00 p.m. if school was not in session) until school began on Monday (or 8:00 a.m. if school was not in session). The court also ordered that Aguirre would have possession of the child for an additional ten days during the summer with five days taken from each of the parents. The court also lifted the geographic restrictions and permitted Aguirre (1) to take the child anywhere in the continental United States during his periods of possession without Logan's and Bloom's permission and (2) to take the child outside the continental United States without Logan's and Bloom's permission during his summertime possession of the child.

On October 28, 2015, the trial court signed the final order in this suit. The court stated in the order that Aguirre had a contractual right of possession of the child, and, in order "to insure the safety and well being of the child," the court awarded Aguirre:

> the following non-parent rights and duties during his possession:
>
> 1. the duty of care, control, protection, and reasonable discipline of the child;
>
> 2. the duty to provide clothing, food, and shelter; and
>
> 3. the right to consent to medical, dental and/or surgical treatment during an emergency involving an immediate danger to the health and safety of the child.

conflicts with holidays for which the May 14, 2009 order provided the parents would have possession of the child.

The court awarded Aguirre possession of the child and lifted the geographic restrictions as provided in the July 23, 2015 temporary orders. The court denied Logan's and Bloom's requests for attorney's fees and ordered that Logan pay Aguirre's attorney's fees.

## JURISDICTION

■ In her first and second issues, Logan contends the trial court erred by denying her plea to the jurisdiction and motion to dismiss. Logan asserts Aguirre did not have standing to intervene in the SAPCR brought by Logan and Bloom in 2008 and did not have standing to bring this suit seeking modification of the May 14, 2009 order.

Aguirre argues he has standing to bring this suit for modification because he is a party affected by a prior order, namely, the May 14, 2009 order. *See* Tex. Fam. Code Ann. § 156.002(a) (West 2014) ("A party affected by an order may file a suit for modification in the court with continuing, exclusive jurisdiction."). Logan argues, however, that the trial court lacked jurisdiction to render this order because (a) Aguirre lacked standing to seek relief in the 2008 suit and (b) the May 14, 2009 order was based on the Consent Order, and she asserts that the Virginia court lacked jurisdiction to render the Consent Order.

Aguirre asserts that Logan's arguments constitute collateral attacks on the May 14, 2009 order and that Logan must prove that order is void because the trial court lacked jurisdiction over the parties, the property, or the subject matter, or lacked subject matter jurisdiction to render the judgment. *See Browning v. Prostok*, 165 S.W.3d 336, 346 (Tex. 2005). Logan argues the trial court lacked subject-matter jurisdiction over Aguirre's petitions in intervention leading to the May 14, 2009 order

because Aguirre lacked standing to intervene in her and Bloom's SAPCR. *See RSL Funding, LLC v. Pippins*, 499 S.W.3d 423, 429 (Tex. 2016) ("standing is a component of subject matter jurisdiction and absent jurisdiction, a court cannot address the merits of a case"). The trial court found in May 2009 that Aguirre had standing to intervene in the SAPCR under section 102.004(b) as a person with substantial past contact with the child. *See* Fam. § 102.004(b) (West 2014) ("[T]he court may grant a grandparent or other person deemed by the court to have had substantial past contact with the child leave to intervene in a pending suit filed by a person authorized to do so under this subchapter if there is satisfactory proof to the court that appointment of a parent as sole managing conservator or both parents as joint managing conservators would significantly impair the child's physical health or emotional development."). Logan presented the trial court with extrinsic evidence purporting to show Aguirre lacked standing to intervene under section 102.004(b) because Aguirre failed to prove in his intervention that appointing her or Bloom managing conservators "would significantly impair the child's physical health or emotional development." Aguirre argues that extrinsic evidence may not be considered in a collateral attack on a judgment asserting lack of subject-matter jurisdiction.

We need not address these issues because, regardless of whether Aguirre had standing to bring his petition in intervention in 2008, Logan and Bloom had standing as parents of the child to bring their SAPCR in 2008 concerning conservatorship and possession of the child. *See* Fam. § 102.003(a)(1) (West Supp. 2016) ("An original suit may be filed at any time by: (1) a parent of the child . . . ."). The May 14, 2009 order was an agreed order in which Logan and Bloom agreed to let

Aguirre have limited possession of the child. *See In re B.N.L.–B.*, 375 S.W.3d at 561 (the parties reached a settlement on all issues except attorney's fees). Section 153.007 states that if the parties have an "agreed parenting plan" concerning conservatorship and possession of the child that the court finds is in the child's best interest, then the court must render an order in accordance with the plan. FAM. § 153.007(a), (b) (West 2014).[5] The May 14, 2009 order states, "The Court finds that the provisions in this order relating to conservatorship, possession of and access to the child, child support, and a dispute resolution process to minimize future disputes constitute's [sic] Deborah Bloom and Colleen Logan's agreed parenting plan." Logan and Bloom agreed to Aguirre's possession of the child provided in the May 14, 2009 order, and the trial court found the agreed parenting plan was in the child's best interest. Therefore, the court was required to "render an order in accordance with the parenting plan," including Aguirre's possession of the child agreed to by Logan and Bloom.

■ Logan also argues that Aguirre lacked standing because he was the sperm donor. Logan relies on section 160.702 of the Family Code, which states, "A donor is not a parent of a child conceived by means of assisted reproduction." FAM. § 160.702 (West 2014). That provision bars Aguirre from having standing as a parent, but it does not affect his standing to seek modification of an order affecting him.

We conclude the trial court had jurisdiction to render the May 14, 2009 order, which provided Aguirre with limited possession of the child. Therefore, when Aguirre brought his 2014 petition to modify, he was a party affected by the May 14, 2009 order and had standing to bring a petition to modify that order. *See* FAM. § 156.002(a). We conclude the trial court did not abuse its discretion by denying Logan's plea to the jurisdiction and motion to dismiss Aguirre's 2014 motion to modify or by denying Logan's motion to vacate or dismiss the May 14, 2009 order. We overrule Logan's first and second issues.

## ADDITIONAL ACCESS AND POSSESSION

■ In her third through sixth issues, Logan contends the trial court abused its discretion and violated Logan's constitutional rights by appointing Aguirre a possessory conservator of the child and awarding him additional access and possession of the child without Logan's agreement. Under the May 14, 2009 order, Aguirre had possession of the child one weekend per month from 8:30 a.m. on Saturday to 8:00 p.m. on Sunday. The final order in this case awards Aguirre possession of the child one weekend per month from the end of school or 3:00 p.m. on Friday until the beginning of school or 8:00 a.m. the following Monday as well as an additional ten days during the summer, with five of those ten days coming from time that would have belonged to Logan. The final order also lifts the geographic restrictions on Aguirre's travel with the child imposed by the May 14, 2009 order. Logan testified that these changes from the May 14, 2009 order were against her

---

5. Section 153.007 provides:
   (a) To promote the amicable settlement of disputes between the parties to a suit, the parties may enter into a written agreed parenting plan containing provisions for conservatorship and possession of the child and for modification of the parenting plan, including variations from the standard possession order.
   (b) If the court finds that the agreed parenting plan is in the child's best interest, the court shall render an order in accordance with the parenting plan.
   FAM. § 153.007.

wishes and were not in the best interest of the child.

▇▇▇ The relationship between parents and their children is of constitutional dimensions. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). The Due Process Clause of the Fourteenth Amendment "provides heightened protection against government interference with certain fundamental rights and liberty interests." *Troxel v. Granville*, 530 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997)). One of those protected liberty interests is "the interest of parents in the care, custody, and control of their children." *Id.* In *Troxel,* the Supreme Court held that a Washington statute was unconstitutional as applied to the facts of that case. *Id.* at 73, 120 S.Ct. 2054. Logan argues, "*Troxel* turned on the exact error by the Washington Judge, as committed by the Trial Court in the case at bar . . . ."

In *Troxel,* a statute provided that any person could petition the court at any time for visitation rights with a child, and the court could grant the visitation if it was in the best interest of the child. *Id.* at 67, 120 S.Ct. 2054. The statute did not require that the views of the parents opposing the visitation had to be given any weight. *Id.* In that case, the children's paternal grandparents regularly saw the children on weekends when the children's father took them there. *Id.* at 60, 120 S.Ct. 2054. After the father died, the children's mother told the grandparents she wished to limit the visits to one short visit per month. *Id.* at 60–61, 120 S.Ct. 2054. The grandparents then filed a petition under the statute seeking more visitation with the grandchildren. *Id.* at 61, 120 S.Ct. 2054. The trial court ordered that the grandparents would have visitation with the children for one weekend per month, one week during the summer, and four hours on each grandparent's birthday. *Id.* In making that decision, the trial court placed the burden on the mother to disprove that visitation would be in the children's best interest. *Id.* at 69, 120 S.Ct. 2054. Placing the burden of proof on the mother "directly contravened the traditional presumption that a fit parent will act in the best interest of his or her child . . . [and] failed to provide any protection for [the mother's] fundamental constitutional right to make decisions concerning the rearing of her own daughters." *Id.* at 69–70, 120 S.Ct. 2054. The Supreme Court held that the application of the statute to the mother and her family violated her due process right to make decisions concerning the care, custody, and control of her daughters. *Id.* at 75, 120 S.Ct. 2054; *see In re Mays–Hooper*, 189 S.W.3d 777, 777–78 (Tex. 2006) (orig. proceeding) (per curiam) (following *Troxel* in a case with nearly identical facts).

▇▇▇ Although this case has some similarities to *Troxel* and *Mays–Hooper*—a trial court's ordering a parent to allow visitation with a nonparent against the parent's will—it also contains a relevant difference. In *Troxel* and *Mays–Hooper*, there was no judicial oversight of custody, access, and possession of the children before the grandparents filed their petitions for visitation. *See Troxel*, 530 U.S. at 60–61, 120 S.Ct. 2054; *In re Mays–Hooper*, 189 S.W.3d at 777. In this case, Logan and Bloom had agreed to the May 14, 2009 order giving Aguirre court-ordered possession of the child. When Logan and Bloom agreed to give Aguirre possession in the May 14, 2009 order, they necessarily also agreed to his having the right to petition for modification of that order in a subsequent case and to the court's determining whether the modification was in the child's best interest. *See* Fam. § 156.101(a)(1) (West 2014). In modification proceedings,

there is no "parental presumption." *In re V.L.K.*, 24 S.W.3d 338, 343 (Tex. 2000); *In re Lankford*, 501 S.W.3d 681, 689 (Tex. App.–Tyler 2016, orig. proceeding).

Because Logan agreed to Aguirre's having court-ordered possession of the child, which necessarily included the possibility of future modification of the order by the trial court, we conclude there was no violation of her due process rights resulting from the court's modification of the May 14, 2009 order in accordance with the Family Code. We overrule Logan's third through sixth issues.

## BREACH OF CONTRACT

■ Logan contends in her seventh issue that the trial court abused its discretion by denying her claim for breach of contract because the court's ruling was against the great weight and preponderance of the evidence. Logan pleaded that Aguirre breached the Donor Agreement by seeking a legal relationship with the child, which made him subject to the indemnity provision of the Donor Agreement and liable for all of Logan's expenses in defending against his suit. Aguirre pleaded the affirmative defense of novation, arguing that the May 14, 2009 order was a novation of the Donor Agreement.

This case was tried before the court without a jury, and the court made findings of fact and conclusions of law. The trial court's findings of fact form the basis of the judgment on all the claims and defenses covered by the findings. TEX. R. CIV. P. 299. "The judgment may not be supported upon appeal by a presumed finding upon any ground of recovery or defense, no element of which has been included in the findings of fact; but when one or more elements thereof have been found by the trial court, omitted unrequested elements, when supported by evi-

dence, will be supplied by presumption in support of the judgment." *Id.*

■ In an appeal from a nonjury trial, findings of fact carry the same weight as a jury's verdict and are reviewed under the same standards that are applied in reviewing evidence to support a jury's verdict. *Shaw v. Cty. of Dallas*, 251 S.W.3d 165, 169 (Tex. App.–Dallas 2008, pet. denied). In evaluating the legal sufficiency of the evidence to support a finding, we view the evidence in the light most favorable to the finding, indulging every reasonable inference supporting it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). We "must credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not." *Id.* at 827. The ultimate test is whether the evidence allows reasonable and fair-minded people to reach the finding under review. *See id.* Anything more than a scintilla of evidence is legally sufficient to support a challenged finding. *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors*, 960 S.W.2d 41, 48 (Tex. 1998). In reviewing the factual sufficiency of the evidence, we view all the evidence in a neutral light and set aside the finding only if the finding is so contrary to the overwhelming weight of the evidence such that the finding is clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam); *Morris v. Wells Fargo Bank, N.A.*, 334 S.W.3d 838, 842 (Tex. App.–Dallas 2011, no pet.).

■ Novation is the substitution of a new agreement in place of an existing agreement between the same parties. *Fulcrum Cent. v. Auto Tester, Inc.*, 102 S.W.3d 274, 277 (Tex. App.–Dallas 2003, no pet.). It is an affirmative defense to a claim for breach of contract. *Id.* A novation occurs if a contract evidences an intention to relinquish and extinguish pre-existing

claims and rights of action; in lieu of the old obligation, a party accepts the promise of performance of the new obligation instead of the performance itself. *Id.* The novation contract discharges the original obligation, and only the new obligation may be enforced. *Id.*

The party asserting the defense of novation must prove: (1) a previous, valid obligation; (2) a mutual agreement of the parties to the acceptance of a new contract; (3) the extinguishment of the old contract; and (4) the validity of the new contract. *Vickery v. Vickery,* 999 S.W.2d 342, 356 (Tex. 1999). "The substitution of a new agreement occurs when a later agreement is so inconsistent with a former agreement that the two cannot subsist together." *Fulcrum,* 102 S.W.3d at 277 (quoting *Scalise v. McCallum,* 700 S.W.2d 682, 684 (Tex. App.–Dallas 1985, writ ref'd n.r.e.)). In the absence of inconsistent provisions, "a second contract will operate as a novation of a first contract only when the parties to both contracts intend and agree that the obligations of the second shall be substituted for and operate as a discharge of the obligations of the first." *Id.* (quoting *Chastain v. Cooper & Reed,* 152 Tex. 322, 257 S.W.2d 422, 424 (1953)). Thus, whether a subsequent agreement works a novation of the first is a question of intent. *Id.* It must clearly appear that the parties intended a novation, and novation is never presumed. *Id.* In the absence of express agreement, whether a new contract operates as a novation of an earlier contract is "usually a question of fact, and can only become a question of law when the state of the evidence is such that reasonable minds cannot differ as to its effect." *Id.* (quoting *Chastain,* 257 S.W.2d at 424).

The trial court's findings of fact and conclusions of law did not directly address the elements of Logan's breach-of-contract cause of action. Instead, the court found that the December 9, 2008 agreement and the May 14, 2009 order constituted a novation of the Donor Agreement:

11. The December 9, 2008 agreement and the May 14, 2009 order *in Suit Affecting the Parent–Child Relationship* constitute a novation of the purported 2001 Donor Agreement, thereby precluding its enforcement by COLLEEN LOGAN. Specifically: (1) the Donor Agreement is claimed by LOGAN to be a valid obligation, for the purposes of establishing the first element of a novation; (2) the agreement of LOGAN, BLOOM, and AGUIRRE—all parties to the Donor Agreement—with respect to AGUIRRE's rights to the child is clearly expressed in the December 9, 2008 agreement, as well as the May 14, 2009 order *in Suit Affecting Parent–Child Relationship,* which disposed of all claims; (3) such agreements and orders fully disposed of the claims under the Donor Agreement with respect to MARK AGUIRRE's rights to the child; and (4) the December 2008 agreements of the parties, memorialized [sic] in the May 2009 *Order in Suit Affecting Parent–Child Relationship* are valid.

In this case, there is evidence of the elements of a novation: (1) there was a previous, valid obligation—the Donor Agreement; (2) there was mutual agreement of the parties to the acceptance of a new contract—the agreed May 14, 2009 order; (3) the extinguishment of the old contract—Aguirre testified the parties intended for the May 14, 2009 order to extinguish the Donor Agreement;[6] and (4) the

---

6. Aguirre was asked whether he would sue Logan and Bloom for breach of the Donor Agreement and seek his attorney's fees if they sued him for child support. Aguirre answered, "It is my understanding that that agreement is superseded by our last agreement." Aguirre

May 14, 2009 order is a valid obligation. Logan testified the May 14, 2009 order did not supersede the Donor Agreement, and Bloom did not testify on the subject.

Logan argues the trial court erred by finding a novation in this case for the same reason we stated in the opinion from Aguirre's appeal of the May 14, 2009 order that there was no novation. *See In re B.N.L.-B.*, 375 S.W.3d at 562-64. In that appeal, Aguirre argued the Consent Order was a novation of the Donor Agreement. We disagreed, stating the two agreements were not so inconsistent as to create a novation:

> The only apparent inconsistency between the Donor Agreement and the Consent Order was their treatment of Aguirre's visitation with and access to B.N.L.-B. When read together, the terms of the Donor Agreement and Consent Order are not inconsistent: in the Donor Agreement, Aguirre promised not to "demand, request, or compel ... visitation rights" with respect to a child not yet in existence. While the Consent Order acknowledged past visits between Aguirre and B.N.L.-B. and sets forth a plan to continue those visits with Bloom and Logan's agreement, the Consent Order does not bestow any rights on Aguirre to "demand, request, or compel ... visitation rights." Rather, the Consent Order continues to recognize that "Aguirre agrees that he does not have standing and will not seek custody" of B.N.L.-B.

*Id.* at 563.

The current situation is different from that before this Court in the earlier appeal. Now, the asserted novation is the result of the agreed May 14, 2009 order,

not the Consent Order. Unlike the Consent Order, the May 14, 2009 order contains no language that "Aguirre agrees that he does not have standing and will not seek custody" of the child. When Logan and Bloom agreed to the May 14, 2009 order allowing Aguirre the right to limited possession of the child, they also gave him the right to seek modification of that order in a motion to modify under section 156.002(a). Also, we noted in the opinion from Aguirre's appeal that "[t]he only evidence concerning novation consists of the provisions of the Donor Agreement and Consent Order." *Id.* In this case, there is disputed testimony concerning novation by the May 14, 2009 order. Aguirre testified that, in his "view" and his "understanding," the May 14, 2009 order superseded the Donor Agreement. Logan testified she did not intend for the May 14, 2009 order to supersede the Donor Agreement. This Court's reasoning in Aguirre's appeal that there was no novation does not apply in this appeal.

Logan's breach-of-contract cause of action was based on the continued viability of the Donor Agreement. The trial court found the May 14, 2009 order constituted a novation of the Donor Agreement, and legally and factually sufficient evidence supports that finding. Therefore, the trial court did not abuse its discretion by denying Logan's claim for breach of contract. We overrule Logan's seventh issue.

## ATTORNEY'S FEES

In her eighth issue, Logan contends the trial court erred by not ordering Aguirre to pay her attorney's fees. Logan argues on appeal two bases for seeking attorney's fees: (1) as damages in her claim for

---

was also asked, "And in your view, did that agreement [the May 14, 2009 order] modify

and replace the prior agreements that y'all had?" and Aguirre answered, "Yes."

breach of the Donor Agreement; and (2) under section 37.009 of the Texas Civil Practice and Remedies Code on her suit for declaratory judgment.[7]

Logan first argues she was entitled to recover her attorney's fees as damages in her breach-of-contract action under the Donor Agreement. As discussed above, the Donor Agreement was not viable after the May 14, 2009 order. Therefore, Logan cannot assert a claim for breach of the Donor Agreement by reason of Aguirre's actions after May 14, 2009.

Logan also argues she "was entitled to recover her fees under her Declaratory Judgment claims" and cites section 37.009 of the Texas Civil Practice and Remedies Code. That section provides, "the court may award costs and reasonable and necessary attorney's fees as are equitable and just." TEX. CIV. PRAC. & REM. CODE ANN. § 37.009 (West 2015). The award of attorney's fees under this provision is discretionary with the trial court. *Bocquet v. Herring*, 972 S.W.2d 19, 20 (Tex. 1998) ("The statute thus affords the trial court a measure of discretion in deciding whether to award attorney fees or not."). Logan does not explain why the trial court's failure to award her attorney's fees was inequitable and unjust. Logan has not shown the trial court abused its discretion by failing to award her attorney's fees under section 37.009.

We conclude the trial court did not abuse its discretion by denying Logan's claim for attorney's fees. We overrule Logan's eighth issue.

7. In her counterclaim, Logan also sought attorney's fees under section 38.001 of the Texas Civil Remedies and Practice Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(8) (West 2015). On appeal, however, she does not argue entitlement to attorney's fees under that provision. Accordingly, we do not address whether the trial court erred by not awarding her attorney's fees under section 38.001.

## CONCLUSION

We affirm the trial court's judgment.