**Affirmed; Opinion Filed February 11, 2019.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-18-00037-CV

## IN THE INTEREST OF S.V. AND S.V., CHILDREN

**On Appeal from the 255th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DF-04-11968-V**

# MEMORANDUM OPINION
Before Justices Partida-Kipness, Pedersen, III, and Carlyle
Opinion by Justice Carlyle

Appellant Father challenges the trial court's October 20, 2017 order modifying a permanent injunction in a suit affecting the parent–child relationship ("SAPCR") regarding Father, Mother, and their two children ("the children"). The permanent injunction in question concerns Father's communications with appellee Coppell Independent School District ("CISD").

Father contends this Court should remand this case for a new trial because the trial court did not file any findings of fact and conclusions of law; the trial court erred by modifying the permanent injunction in question because "it did not have the plenary powers or the jurisdiction to do so" and "there were no changed circumstances to warrant the modification"; and the October 20, 2017 order in question is "vague and unenforceable."

We decide against Father and affirm the trial court's order.

# I. FACTUAL AND PROCEDURAL CONTEXT

This SAPCR was filed in the trial court in 2004 in connection with the divorce of Mother and Father. In 2012, the trial court appointed Mother sole managing conservator of the children and appointed Father possessory conservator. On May 4, 2016, the trial court signed an order that addressed multiple ongoing parenting issues and included a list of activities from which Father is permanently enjoined "because of [his] conduct." Specifically, the 2016 Order stated in part that Father is permanently enjoined from "[c]ontacting the children's teachers and/or coaches" and "if [Father] wishes to communicate with the children's school it shall be done through the Assistant Superintendent of Coppell Independent School District, Mr. Brad Hunt, his successor, or his appointed designee."[1] Father timely appealed that order to this Court. *See In re S.V.*, No. 05-16-00519-CV, 2017 WL 3725981 (Tex. App.—Dallas Aug. 30, 2017, pet. denied).

While Father's appeal of the 2016 Order was pending in this Court, CISD filed in the trial court a March 31, 2017 "Petition in Intervention" in this SAPCR. In that petition in intervention, CISD asserted (1) it "has a justiciable interest in this lawsuit since its interests are affected by the [2016 Order]"; (2) "[Father] has repeatedly and unnecessarily abused his communications with [CISD] under guise of the Order"; and (3) "[b]ecause of [Father's] repeated abusive communications, [CISD] asks the Court to modify/reform its Order to place reasonable limitations on [Father's] communications with [CISD] through Mr. Hunt." Father filed an April 4, 2017 "Motion to Dismiss" and subsequent written "objections" in which he contended CISD's petition in intervention should be "denied" because it was "untimely filed," the trial court "does not have any jurisdiction to modify/reform the Order at this time," and CISD's proposed modification "clearly is prejudicial" to Father.

---

[1] The provisions of the orders described in this opinion became inapplicable to the older of the two children in this case when she turned eighteen several years ago. For consistency, we refer in this opinion to the "children" when addressing those provisions, while understanding that the orders described now pertain only to the younger child. *See In re S.V.*, No. 05-16-00519-CV, 2017 WL 3725981, at *1 n.1 (Tex. App.—Dallas Aug. 30, 2017, pet. denied).

The trial court held a May 1, 2017 bench trial in which it addressed several pending matters respecting Mother and Father, including child support modification, attorney's fees, and CISD's requested modification to the 2016 Order. The exhibits admitted into evidence at trial included some 240 pages of emails between Father and Hunt or other CISD employees. The dates of the emails ranged from April 2016 to April 2017, with approximately 180 pages of those emails falling within the time frame of May 4, 2016 to March 31, 2017. Also, Father and Hunt testified at trial.

While CISD's petition in intervention was pending in the trial court, this Court issued its August 30, 2017 opinion in Father's appeal of the 2016 Order. *See id*. Specifically, this Court reversed part of the 2016 Order, but affirmed the portion containing the permanent injunction described above. *Id*. at *10, 14.

On October 20, 2017, the trial court signed the order at issue in this appeal,[2] titled "Order Modifying Order in Suit Affecting the Parent–Child Relationship Nunc Pro Tunc." The 2017 Order provides in part that the 2016 Order "is modified to add the following language":

> [Father] shall be permitted to contact [CISD] only through the Assistant Superintendent Mr. Brad Hunt, or his successor, a maximum of two (2) occasions per Work-Week and only between the hours of 8:30am and 4:30pm (CT), with the exception of a legitimate Family Emergency.
>
> > a. Contact shall be defined as in person verbal communication, telephone calls, emails, text messages, and/or any other type of verbal, written, or electronic communication.
> >
> > b. Work-Week shall be defined as a five-day period, commencing on Monday at 12:01 a.m. and ending the following Friday at midnight.
> >
> > c. Family Emergency shall be defined as disasters and life threatening situations involving [Father] or his spouse; children, including a biological, adopted, or foster child, a son- or daughter-in-law, a stepchild, a legal ward, or a child for whom [Father] stands in loco parentis; a parent; stepparent; parent-in-law, or other individual who stands in loco parentis to [Father]; a sibling, stepsibling, and sibling-in-law; a grandparent and grandchild, or any person residing in [Father's] household at the time of serious illness or

---

[2] That same date, the trial court signed a separate order in this SAPCR titled "Order Denying Motion to Reduce Child Support." That order neither mentioned nor addressed the permanent injunction in question.

death. [CISD] shall make its best effort to respond to [Father] within thirty-six (36) hours from the Contact to [CISD], unless a longer period of time is permitted pursuant to State of Texas or Federal law. [Father] shall not Contact [CISD] on any Non-Contract days, with the exception of a legitimate Family Emergency.

d. Non-Contract shall be defined as any Saturday or Sunday, Federal or State Holiday; School Holiday; Fall, Winter, Spring Break; Summer Vacation; or other period of time in which [CISD] students are not attending classes at their respective campuses. Any Contact to [CISD] by [Father] shall be limited to solely the legally accessible written educational records of his children enrolled in [CISD], and/or a single (1) question regarding the student records or information legally available to him. [Father] shall not Contact any [CISD] employee, coach, or teacher other than Brad Hunt, or his successor.

e. Regular School Day shall be defined as the hours, Monday through Friday, between 6:00am and 5:00pm (CT).

Father filed (1) a November 30, 2017 "Notice of Past Due Findings of Fact and Conclusions of Law" in which he stated in part that he "timely filed a Request for Findings of Facts and Conclusions of Law" on November 9, 2017;[3] (2) a December 1, 2017 "Request for Additional Findings of Fact and Conclusions of Law" in which he stated in part, "[Father] makes a Request for Finding of Facts and Conclusions of Law regarding the following rulings by the Court: Order Modifying Order in Suit Affecting the Parent–Child Relationship Nunc Pro Tunc"; and (3) a December 11, 2017 "Notice of Past Due Additional Findings of Fact and Conclusions of Law." In those documents, Father cited Texas Rules of Civil Procedure 296, 297, 298, and 306a.1.

The trial court never filed findings of fact or conclusions of law. Father timely noted this appeal.

## II. LACK OF FINDINGS OF FACT AND CONCLUSIONS OF LAW

In a district court case tried without a jury, any party may request written findings of fact and conclusions of law. TEX. R. CIV. P. 296. This request "shall be filed within twenty days after

---

[3] The appellate clerk's record in this case does not contain a November 9, 2017 request for findings of fact and conclusions of law.

judgment is signed." *Id*. "The court shall file its findings of fact and conclusions of law within twenty days after a timely request is filed." TEX. R. CIV. P. 297. If the court fails to do so, the party making the request shall, within thirty days of the original request, file a "Notice of Past Due Findings of Fact and Conclusions of Law." *Id*. Further, "[a]fter the court files original findings of fact and conclusions of law, any party may file . . . a request for specified additional or amended findings or conclusions." TEX. R. CIV. P. 298. "The request for these findings shall be made within ten days after the filing of the original findings and conclusions by the court." *Id*.; *see also* TEX. R. CIV. P. 306a.1 (date judgment or order is signed determines beginning of periods for filing requests for findings of fact and conclusions of law). The application of the rules of civil procedure to the facts of this case is a question of law we review de novo. *See, e.g., In re Landry*, No. 10-13-00293-CV, 2014 WL 1775501, at *2 (Tex. App.—Waco Apr. 10, 2014, no pet.) (mem. op.).

Texas Family Code section 154.130(a) states that, without regard to Texas Rules of Civil Procedure 296 through 299, "in rendering an order of child support, the court shall make the findings required by Subsection (b) if: (1) a party files a written request with the court before the final order is signed, but not later than 20 days after the date of rendition of the order; (2) a party makes an oral request in open court during the hearing; or (3) the amount of child support ordered by the court varies from the amount computed by applying the percentage guidelines under [the family code]."[4] TEX. FAM. CODE ANN. § 154.130(a).

A trial court's refusal to make findings and conclusions upon proper request is presumed reversible error unless the record affirmatively shows the requesting party suffered no harm. *R.H. v. Smith*, 339 S.W.3d 756, 766 (Tex. App.—Dallas 2011, no pet.) (citing *Willms v. Americas Tire Co., Inc.*, 190 S.W.3d 796, 801 (Tex. App.—Dallas 2006, pet. denied)). The general rule is that a

---

[4] The specific required findings listed in subsection 154.130(b) are the net resources of the obligor and obligee, the percentage applied to the obligor's net resources for child support, and the specific reason the amount of child support ordered differs from the guidelines of the family code. *Id.* § 154.130(b).

complainant has been harmed if the failure to make findings and conclusions causes him to have to guess at the reason the trial court ruled against him or prevents him from properly presenting his case to the appellate court. *Willms*, 190 S.W.3d at 802. But, "[w]hen only one issue is presented to the trial court, a complainant does not usually have to guess at the reasons for the trial court's ruling." *Smith*, 339 S.W.3d at 766.

In his first issue, Father asserts this Court should remand this case for a new trial because the trial court did not file any findings of fact and conclusions of law. According to Father, findings of fact and conclusions of law were "timely requested" by him and he has been harmed because the circumstances of this case require him to "guess at the reasons for the trial court's decision." In support of his assertion respecting a "timely request" by him, Father cites his December 1, 2017 "Request for Additional Findings of Fact and Conclusions of Law" and his December 11, 2017 "Notice of Past Due Additional Findings of Fact and Conclusions of Law." Also, Father contends family code section 154.130(a) "requires the trial judge to make and enter her findings within 15 days after the request is made where a Child Support Order is involved."

As described above, the order challenged by Father in this appeal is dated October 20, 2017. Thus, a request for findings of fact and conclusions of law pursuant to rule 296 was timely only if filed by November 9, 2017. *See* TEX. R. CIV. P. 296. The appellate clerk's record in this case does not contain a request for findings of fact and conclusions of law filed within that time period. In a companion case in this Court docketed as cause number 05-17-01294-CV, the appellate clerk's record contains a November 9, 2017 request for findings of fact and conclusions of law filed by Father in this SAPCR. However, that request specifically states as follows:

> On May 1, 2017, a hearing was held in this case before this Court after which the Court signed an Order on October 20, 2017. . . . [Father] makes a Request for Finding of Facts and Conclusions of Law regarding the following rulings by the Court:

> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that [Mother] have and recover from [Father] the sum of $750.00 for her reasonable and necessary attorney's fees with postjudgment interest thereon at the rate of five percent (5%) per annum from the date of this judgment until paid.
> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that [Mother] is entitled to enforce this judgment through abstract, execution and any other process necessary.
>
> . . . .
>
> WHEREFORE Movant, [Father], prays to the Court to state in writing the findings of fact and conclusions of law (as provided by rule 296 of the Texas Rules of Civil Procedure) on the above mentioned matters. . . .

The "rulings" specifically described by Father in that November 9, 2017 request are not contained in the 2017 Order challenged in this appeal, but rather are contained in the trial court's separate October 20, 2017 order described above titled "Order Denying Motion to Reduce Child Support." Father cites no portion of the record, and we have found none, showing that a request for findings of fact and conclusions of law respecting the 2017 Order was filed within twenty days of the signing of that order. *See id.* Further, to the extent Father relies on his reference to the 2017 Order in his December 1, 2017 "Request for Additional Findings of Fact and Conclusions of Law," that request is not timely under rule 296, nor does it comply with the provisions of rule 298. *See id.*; TEX. R. CIV. P. 298 ("<u>After the court files original findings of fact and conclusions of law</u>, any party may file . . . a request for specified additional or amended findings or conclusions." (emphasis added)).

Additionally, Father's contention that family code section 154.130 required the trial judge to "make and enter her findings within 15 days after the request is made" misses the mark. The appellate record does not show any request for findings pursuant to section 154.130 or any mention of that section in the trial court. Therefore, the trial court did not err by not making such findings. *See In re T.G.*, No. 05-12-00460-CV, 2013 WL 3154975, at *6 (Tex. App.—Dallas Jun. 19, 2013, no pet.) (mem. op.) (where father did not make timely written or oral request under section 154.130, he "waived any findings under section 154.130"); *In re T.A.*, 346 S.W.3d 676, 679 (Tex.

App.—El Paso 2009, pet. denied) (where father's request for findings of fact was explicitly made pursuant to rule 296 and record did not show request for section 154.130 findings, trial court did not err in not making section 154.130 findings).

Moreover, as to Father's assertion that he has been harmed, "[w]hen only one issue is presented to the trial court, a complainant does not usually have to guess at the reasons for the trial court's ruling." *Smith*, 339 S.W.3d at 766. In the case before us, CISD's petition in intervention stated, "Because of [Father's] repeated abusive communications, [CISD] asks the Court to modify/reform its Order to place reasonable limitations on [Father's] communications with [CISD] through Mr. Hunt." No other theory or ground for modification was asserted by CISD. We disagree with Father's position that the circumstances of this case require him to "guess at the reasons for the trial court's decision." *See id.*; *see also Willms*, 190 S.W.3d 802–03 (where there was only single ground before court for determining appellants were vexatious litigants, appellants did not have to guess at reasons for court's ruling and therefore were not harmed by lack of findings and conclusions).

On this record, we conclude the trial court did not err by not filing findings of fact and conclusions of law.

### III. UNTIMELY INTERVENTION AND MODIFICATION

In his second issue, Father asserts the trial court erred by (1) not dismissing CISD's post-judgment petition in intervention as "untimely" and (2) modifying the permanent injunction in question when the trial court lacked "plenary jurisdiction." We begin with the second of those two arguments.

### A. Modification During Pending Appeal

Whether a trial court properly exercised its plenary jurisdiction is a question of law we review de novo. *See, e.g.*, *Coleman v. Sitel Corp.*, 21 S.W.3d 411, 413 (Tex. App.—San Antonio

2000, no pet.). Generally, a trial court loses jurisdiction over a controversy once an appeal is perfected, provided that the trial court retains plenary power to grant a new trial or to vacate, modify, correct, or reform the judgment for 30 days after signing the judgment, or 30 days after certain timely post-judgment motions are overruled. TEX. R. CIV. P. 329b(d), (e). This Court has recognized an exception pertaining to SAPCR orders. *See In re G.E.D.*, No. 05-17-00160-CV, 2018 WL 258982, at \*3 (Tex. App.—Dallas Jan. 2, 2018, no pet.) (mem. op.). Specifically, "a trial court with continuing, exclusive jurisdiction has jurisdiction over a new proceeding to modify the parent–child relationship even if an appeal is pending from a previous order regarding that relationship." *Id*. at \*4.

Father does not cite or address *G.E.D.*, nor does he address *Hudson v. Markum*,[5] on which *G.E.D.* relied. The record shows, and the parties do not dispute, that the trial court acquired continuing, exclusive jurisdiction over this SAPCR. *See* TEX. FAM. CODE ANN. § 155.001 ("a court acquires continuing, exclusive jurisdiction over matters provided for by this title in connection with a child on rendition of a final order"). Accordingly, we conclude the trial court retained jurisdiction to modify the 2016 Order while the appeal described above was pending in this Court. *See G.E.D.*, 2018 WL 258982, at \*4 (citing *In re Reardon*, 514 S.W.3d 919, 930 (Tex. App.—Fort Worth 2017, orig. proceeding) (concluding trial court had jurisdiction to adjudicate petition for modification pending appellate review of prior final SAPCR order)).

## B. Post-Judgment Petition in Intervention

We review a trial court's denial of a motion to strike intervention for an abuse of discretion. *See, e.g., In re N.L.G.*, 238 S.W.3d 828, 829 (Tex. App.—Fort Worth 2007, no pet.). A trial court

[5] 931 S.W.2d 336, 337–38 (Tex. App.—Dallas 1996, no writ). We are bound to follow *Hudson* and *G.E.D. See MobileVision Imaging Servs., L.L.C. v. Lifecare Hosps. of N. Tex., L.P.*, 260 S.W.3d 561, 566 (Tex. App.—Dallas 2008, no pet.).

abuses its discretion if it acts without reference to any guiding rules or principles or if it acts in an arbitrary or unreasonable manner. *See Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007).

To support his position that CISD's petition in intervention should have been dismissed as untimely, Father cites *Texans United Education Fund v. Texaco Inc.*, 858 S.W.2d 38 (Tex. App.—Houston [14th Dist.] 1993, writ denied). That case did not involve a SAPCR, and thus is inapposite.

In a SAPCR, "a trial court with continuing, exclusive jurisdiction has jurisdiction over a new proceeding to modify the parent–child relationship even if an appeal is pending from a previous order regarding that relationship." *G.E.D.*, 2018 WL 258982, at *4. Continuing, exclusive jurisdiction exists beyond the thirty-day extension of plenary power. *See id*. Further, a petition seeking a modification in a SAPCR "is considered a separate lawsuit." *Reardon*, 514 S.W.3d at 925; *see also In re L.N.E.*, No. 05-07-01712-CV, 2009 WL 280472, at *2 (Tex. App.—Dallas Feb. 6, 2009, no pet.) (mem. op.) (motion to modify order in SAPCR "constituted a new cause of action and proceeding"); *Blank v. Nuszen*, No. 01-13-01061-CV, 2015 WL 4747022, at *2 (Tex. App.—Houston [1st Dist.] Aug. 11, 2015, no pet.) (mem. op.) ("A suit for modification filed after the rendition of a final order in a SAPCR constitutes an 'original' lawsuit.").

Section 156.002(b) of the family code states that a suit for modification in a SAPCR may be filed by "[a] person or entity who, at the time of filing, has standing to sue under Chapter 102." FAM. CODE § 156.002(b). Chapter 102 provides in part that "[a]n original suit may be filed at any time" by "a governmental entity." *Id*. § 102.003(a)(5); *see also id*. § 101.014 ("governmental entity" in Title 5 of family code means "the state, a political subdivision of the state, or an agency of the state"). Thus, a school district is an entity that may file a suit for modification in a SAPCR. *See* TEX. GOV'T CODE ANN. § 554.001(2)(C) ("local governmental entity" means "a political subdivision of the state, including a . . . public school district"); TEX. CIV. PRAC. & REM. CODE

ANN. § 101.001(3)(B) (defining "governmental unit" as "a political subdivision of this state, including any . . . school district").

As described above, CISD titled its request for relief "Petition in Intervention." But "[w]e look to the substance of a plea for relief to determine the nature of the pleading, not merely at the form of title given to it." *State Bar of Tex. v. Heard*, 603 S.W.2d 829, 833 (Tex. 1980); *accord Surgitek, Bristol-Myers Corp. v. Abel*, 997 S.W.2d 598, 601 (Tex. 1999) (courts look to substance of pleading rather than caption or form to determine nature). The substance of CISD's petition was limited solely to modification of the 2016 Order. We conclude CISD's petition was a suit for modification pursuant to the family code and the trial court had jurisdiction over that new proceeding.[6] *See* FAM. CODE §§ 156.002(b), 102.003(a)(5); *G.E.D.*, 2018 WL 258982, at *4.

To the extent Father's allegations of "prejudice" are relevant to this analysis, Father's entire prejudice argument on appeal is as follows: "In this case, the 4 page Order signed on October 20, 2017, to replace a one line injunction in a custody order signed more than a year ago (May 4, 2016 to be exact) is clearly prejudicial to Father." CISD's petition in intervention was focused solely on Father's post-2016-order behavior. Father's *ipso facto* argument seems to be that a longer, broader injunction provision replacing a shorter, less all-encompassing one must always be prejudicial. Boiled down, Father complains that the 2017 Order restrains him more than he would prefer. We are unmoved.

On this record, we conclude the trial court retained jurisdiction as to the modification in question and acted within its discretion by not striking CISD's petition in intervention.

---

[6] Additionally, family code section 156.002(a) provides: "A party affected by an order may file a suit for modification in the court with continuing, exclusive jurisdiction." FAM. CODE § 156.002(a). "'Party' has two ordinary meanings in the legal context: (1) a participant in a transaction, such as a party to a contract, or (2) one by or against whom a lawsuit is brought." *L.N.E.*, 2009 WL 280472, at *2 (citing BLACK'S LAW DICTIONARY 1154 (8th ed. 2004)). In light of our conclusions above, we need not reach the question of whether CISD was entitled to proceed pursuant to section 156.002(a) as a "participant in a transaction." *See In re B.N.L.-B.*, 523 S.W.3d 254, 261 (Tex. App.—Dallas 2017, no pet.) (concluding individual who tried to participate in SAPCR but potentially lacked standing could bring suit under 156.002(a) to modify order that addressed his rights).

## IV. CHANGE IN CIRCUMSTANCES

"[A] trial court generally retains jurisdiction to modify a permanent injunction if circumstances change." *Morath v. Tex. Taxpayer & Student Fairness Coalition*, 490 S.W.3d 826, 886 (Tex. 2016); *see also City of Seagoville v. Smith*, 695 S.W.2d 288, 289 (Tex. App.—Dallas 1985, no writ) (as long as order concerns continuing situation, trial court retains power to change, alter, or modify equitable relief it granted by injunction upon showing of changed circumstances). Changed circumstances are conditions that alter the status quo after the issuance of an injunction. *In re A.G.F.W.*, No. 06-12-00111-CV, 2013 WL 2459886, at *3 (Tex. App.—Texarkana Jun. 6, 2013, no pet.) (mem. op.). The party seeking modification has the burden of demonstrating changed circumstances. *Id.* (citing *Smith*, 695 S.W.2d at 289).

A trial court's modification order in a family law case is reversed only when it appears from the record as a whole that the trial court abused its discretion. *Id.* at *2 (citing *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990)). Under this standard, complaints about the legal and factual sufficiency of the evidence are not independent grounds for asserting error, but instead are relevant factors in determining whether the trial court acted in an arbitrary or unreasonable manner. *In re M.A.M.*, 346 S.W.3d 10, 13 (Tex. App.—Dallas 2011, pet. denied). To determine whether the trial court abused its discretion, we consider whether the trial court had sufficient evidence upon which to exercise its discretion and whether it erred in its exercise of that discretion. *In re W.C.B.*, 337 S.W.3d 510, 513 (Tex. App.—Dallas 2011, no pet.).

In reviewing the legal sufficiency of the evidence, we must consider evidence favorable to the finding under review if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 807, 827 (Tex. 2005). This Court should conclude the evidence is legally insufficient only if the record discloses (1) a complete absence of evidence of a vital fact; (2) the only evidence offered to prove a vital fact

cannot be considered because of rules of law or evidence; (3) the evidence offered to prove a vital fact is no more than a mere scintilla, i.e., "so weak as to do no more than create a mere surmise or suspicion"; or (4) the opposite of the vital fact is conclusively established. *In re L.A.F.*, No. 05-12-00141-CV, 2015 WL 4099760, at *5 (Tex. App.—Dallas Jul. 7, 2015, pet. denied) (mem. op.). "The final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller*, 168 S.W.3d at 827.

In a factual sufficiency review, we examine all the evidence in the record, both supporting and contrary to the trial court's finding, and reverse only if the finding is so against the great weight of the evidence as to be clearly wrong and unjust. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996); *L.A.F.*, 2015 WL 4099760, at *6. Further, when reviewing the legal and factual sufficiency of the evidence, we are mindful that the trier of fact is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Helping Hands Home Care, Inc. v. Home Health of Tarrant Cty, Inc.*, 393 S.W.3d 492, 505–06 (Tex. App.—Dallas 2013, pet. denied).

In his third issue, Father asserts the trial court abused its discretion by modifying the injunction in the 2016 Order because "legally and factually insufficient evidence exists to show 'changed circumstances.'" As described above, the record contains many emails between Father and Hunt or other CISD employees between May 4, 2016, the date of the 2016 Order, and March 31, 2017, the date CISD filed its intervention petition. The emails are of varying length; tone, which flitted between respectful, disdainful, and inappropriate; and timing. The emails illustrate the changing dynamic between Father, Hunt, and other CISD personnel.

After the 2016 Order, Father began insisting that school officials pass messages to his daughters because he decided he couldn't be certain they were receiving his out-of-school

communications. Father then demanded that school officials ensure his daughters read his notes before allowing them to return to class. CISD indicated its discomfort with this practice.

Father recognized the changes, noting in one email his perception that Hunt had "become" Father's secretary. Circumstances changed such that Father threatened to write a news article about his relationship with Hunt. He ended up posting a blog entry entitled "My Secretary, Brad." Several times, and to varying degrees, Father threatened litigation as a means to mold the relationship more to his liking.

Father's requests also became more unique, according to Hunt, standing out from any requests other parents made. Multiple times, Father requested (and sometimes insisted) on visiting school campuses during school hours. There was a time Father visited his daughter's early-morning tennis class and was instructed that this was no longer appropriate. He ignored that instruction and returned to the early morning tennis class at least twice more.

Finally, Father began to defy the trial court's order that he contact only Hunt and challenged Hunt's authority to stop him. This open non-compliance was another change from Father's previous behavior.

On this record, we conclude the evidence is legally and factually sufficient to show a change of circumstances after the 2016 Order. *See L.A.F.*, 2015 WL 4099760, at \*5–6. Accordingly, we conclude the trial court did not abuse its discretion by modifying the permanent injunction as described above.

## V. VAGUE AND UNENFORCEABLE INJUNCTION

An order granting injunction "shall be specific in terms" and "shall describe in reasonable detail . . . the act or acts sought to be restrained." TEX. R. CIV. P. 683. Additionally, the Texas Supreme Court has stated,

> [A]n injunction decree must be as definite, clear and precise as possible and when practicable it should inform the defendant of the acts he is restrained from doing,

without calling on him for inferences or conclusions about which persons might well differ and without leaving anything for further hearing. But obviously the injunction must be in broad enough terms to prevent repetition of the evil sought to be stopped, whether the repetition be in form identical to that employed prior to the injunction or (what is far more likely) in somewhat different form calculated to circumvent the injunction as written. . . . Nor should it be greatly concerned with rights of the defendants that are asserted largely in the abstract.

*San Antonio Bar Ass'n v. Guardian Abstract & Title Co.*, 291 S.W.2d 697, 702 (Tex. 1956) (citations omitted); *see also Ex parte McManus*, 589 S.W.2d 790, 793 (Tex. App.—Dallas 1979, no writ) ("While a decree, to be enforceable through contempt proceedings, must delineate the requirements for compliance in clear, specific and unambiguous terms, . . . it need not be full of superfluous terms and specifications adequate to counter any flight of fancy a contemner may imagine in order to declare it vague.").

In lawsuits affecting the parent–child relationship, we review a trial court's permanent injunction contained within an order for an abuse of discretion. *See S.V.*, 2017 WL 3725981, at \*8 (citing *Peck v. Peck*, 172 S.W.3d 26, 36 (Tex. App.—Dallas 2005, pet. denied)).

In his fourth issue, Father contends the trial court "err[ed] by signing the vague and unenforceable [2017 Order]." Specifically, Father complained of multiple "unclear issues" respecting the 2017 Order in his opening brief.[7] In his reply, he backtracked, claiming they were

---

[7] Father's opening brief stated in part as follows:

- If Father sends a question via email to Brad Hunt who then replies asking for a clarification to which Father responds again, and several such iterations take place, will that count as one single communication or multiple communications (hence prohibited)?

- Also, are Brad Hunt and others at CISD allowed to email Father more than twice a week? If not, would CISD automatically be in violation of this Order since automated emails from teachers, coaches, principals and other administrative staff arrive every week to all parents at all times of day and night?

- If Father gets multiple automated communications per week from various individuals at CISD at different times of the day and night, would he then be allowed to respond to all such communication by immediately forwarding them to Brad Hunt with an appropriate response?

- What would be the instruction if Father is at a different time zone (say India)? Would he still be constrained to sending emails only between 8:30 am and 4:30 pm (CST) which could be in the middle of the night for him in India?

- If Father sends emails outside of 8:30 am and 4:30 pm (CST) what would be the repercussions? Would be held in contempt of the Order?

. . . .

- What if the information needed by the Father is something that would be useless if not provided within a few hours?

rhetorical questions seeking no actual opinion from the Court. But the remainder of Father's briefing on this fourth issue consists of little more than citation to black-letter law and assertions that the 2017 Order is vague and unenforceable. Thus, we are left only with Father's hypotheticals as his bases for relief.

As described above, the 2017 Order includes specific definitions of its terms and describes precise requirements respecting Father's communications with CISD. Father's hypothetical questions are examples of the types of "flight[s] of fancy" contemners may dream up but which do not provide sufficient bases for this Court to declare the order vague. *See San Antonio Bar Ass'n*, 291 S.W.2d at 702; *Ex parte McManus*, 589 S.W.2d at 793; *see also Lockhart v. McCurley*, No. 10-09-00240-CV, 2010 WL 966029, at *4–5 (Tex. App.—Waco Mar. 10, 2010, no pet.) (mem. op.) (injunction that "specifically and expressly" explained acts appellant was enjoined from engaging in and conduct he may engage in left "nothing to conjecture" and was not impermissibly vague). Accordingly, we conclude the trial court did not abuse its discretion by signing the 2017 Order.

## VI. CONCLUSION

We decide against Father on his four issues and affirm the trial court's order.

/Cory L. Carlyle/
CORY L. CARLYLE
JUSTICE

180037F.P05

---

- What types of information would qualify under this statement "longer period of time is permitted pursuant to State of Texas or Federal law."?

. . . .

- All student records are available via CISD's website. If that is all the information that Father can inquire from Brad Hunt or his successors, then there is no need for him to contact CISD at all! Then what is the purpose of all the preceding verbiage in the Order since it would all be redundant?

–16–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

IN THE INTEREST OF S.V. AND S.V.,
CHILDREN

No. 05-18-00037-CV

On Appeal from the 255th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DF-04-11968-V.
Opinion delivered by Justice Carlyle.
Justices Partida-Kipness and Pedersen, III
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

It is **ORDERED** that appellee Coppell Independent School District recover its costs of
this appeal from appellant Venky Venkatraman.

Judgment entered this 11th day of February, 2019.